James Keyes and Laura Keyes, his wife, *v.* Wood, Grant & Co., The Administrator of Stearns A. Houghton, and John Black.

[In Chancery.]

The payee of a negotiable promissory note, who holds it in trust for the benefit of a third person, may transfer it, by indorsement, while current, for a valuable consideration, to any one having no notice of the trust; and such transfer will pass a good title to the note, not only against the payee, but also against the *cestui que trust.*

Keyes et ux. v. Wood et al.

But if the notes were transferred by the payee, in such case, as collateral security merely, the *cestui que trust* will be allowed to redeem them, by paying the amount of the liability for which they were pledged.

If a debt secured by mortgage be assigned, and there be no agreement to the contrary, the mortgage, in equity, goes with it; and if the mortgagee retain the mortgage in his own hands, he will hold it as trustee for the assignee of the debt, even though the assignee, at the time of the assignment, did not know of the existence of the security.

If a part of several notes, secured by the same mortgage, be assigned by the mortgagee, it will be held, in the absence of any contract to the contrary, that a *pro rata* portion of the mortgage security accompanies them.

APPEAL from the court of chancery. The facts were as follows. On the twenty first of September, 1838, Laura Keyes, the plaintiff, and Stearns A. Houghton, children and heirs of Asa Houghton deceased, were joint and equal owners of a tavern stand in Putney, which they agreed to sell to the defendant Black. The plaintiffs, Keyes and wife, on that day quitclaimed to Houghton their right in the property, and he at the same time executed to the plaintiff Laura Keyes a sealed instrument, not acknowledged or recorded, by which he declared, that he held her share in the property in trust for her and would pay the avails as she should direct,—her share to be subject to an accounting between Houghton and her husband of all matters relating to the estate of her father, and to the carrying on of the tavern stand since his decease. On the twenty second of September, 1848, in pursuance of the previous contract with Black, Houghton conveyed the tavern stand to him for the consideration of three thousand dollars, which consideration was secured to Houghton by mortgage on the same premises, the sum being specified in seven promissory notes payable in successive years with interest annually. The four notes first payable, amounting to $1500, one half of the mortgage debt, and also several sums for interest on other notes were paid to Houghton and appropriated to his own use. The note for $500, which had become payable, and the mortgage deed were placed in the hands of the plaintiff, Laura Keyes, and were produced by her on trial in the court of chancery. The two remaining notes, of $500 each, payable April 1, 1843, and April 1, 1844, were, in October, 1842, in the city of New York, indorsed

Keyes et ux. *v.* Wood et al.

by Houghton to Wood, Grant & Co., and delivered by him to them in substitution for a bank certificate of deposite, held by them as security for their previous indorsement for him of sundry drafts,—which certificate of deposite was then given up to Houghton. Wood, Grant & Co. were then informed by Houghton, that the notes were secured by mortgage on land in Vermont, but had no information, that Houghton held the mortgage, or notes, or any part of them, in trust for any one. Wood, Grant & Co. paid about $900 on their liabilities for Houghton, and afterwards collected from other sources than the two notes about $600, towards their indemnity. Previous to the bringing of the bill Houghton had become insolvent, and afterwards died insolvent, and the suit was revived against his adminstrator.

The plaintiffs prayed, by their bill, as to Houghton, that an account might be taken of the matters mentioned in his declaration of trust and of the sums received by him on the mortgage notes and appropriated to his own use,—and that the plaintiffs might have the benefit of the notes which remained unpaid 'to Houghton, to the amount of the share of the mortgage debt belonging to the plaintiff Laura,—and that Houghton and Wood, Grant & Co. might be decreed to surrender the notes in their hands to the plaintiffs for that purpose,—and for an assignment of the mortgage to the plaintiff Laura Keyes,—and for a foreclosure of the mortgage as against Black,—and for general relief.

The court of chancery, September Term, 1846,—KELLOGG, Ch.,—dismissed the bill *pro forma;* from which decree the plaintiffs appealed.

*W. C. Bradley* and *A. Keyes* for plaintiffs.

There can be no doubt, under the circumstances, of the right of the plaintiffs to have an account taken, as against Houghton's administrator and Black, and a decree against both,—the extent of which will be a subject of examination hereafter on accounting.

As to the other defendants, their defence is based upon the doctrine, that, by the indorsement of the notes, the mortgage passed likewise. But in cases where the mortgage cannot be delivered to different persons, we have no case in this state, even if there be elsewhere, in which it has been decided directly, that the right to a

*portion* of the premises passes without possession of the mortgage deed, or some writing of assignment thereof. In *Wright* v. *Parker et al.*, 2 Aik. 212, the mortgagee assigned two out of five notes, and transferred by deed a corresponding portion of the mortgage, and afterwards transferred to another two more of the notes and all his remaining interest in the mortgage. In *King* v. *Harrington et al.*, 2 Aik. 33, it was held, that a regular assignment of the mortgage, accompanied by a delivery of the notes, without indorsement, authorized the assignee to receive payment of the notes. In *Langdon et al.* v. *Keith*, 9 Vt. 299, there was a regular assignment of the whole mortgage, and of all the mortgage notes except one. So in *Mechanics' Bank* v. *Niagara Bank*, 9 Wend. 410, there was an assignment of part by an indorsement to that effect, both on the bond and the mortgage. As to a complete assignment of the whole debt and mortgage, it is held in Massachusetts, that no assignment passes by the delivery of the mortgage deed; 15 Mass. 232; and that an assignment of the debt does not carry the mortgage; 17 Mass. 419;—while in New York a delivery of the mortgage deed is a sufficient assignment without writing; *Bunyan* v. *Mersereau*, 11 Johns. 534; *Wilson* v. *Troup*, 2 Cow. 231; and a transfer of the debt carries the mortgage with it; and in *Green* v. *Hart*, 1 Johns. 580, where the note was indorsed and the mortgage delivered, it was strongly contended, that the delivery, by the mortgagee, of the mortgage, together with the note indorsed, constituted a transfer of the mortgage, and it was so held by the court of errors. In *Jackson* v. *Blodget*, 5 Cow. 202, where the bond was regularly assigned and notice thereof given to the obligor, it was held, that a payment afterwards to the obligee was not justified by the fact, that the mortgage was not delivered,—which is a different question.

So the question is open here, whether the indorsement of part of the notes shall operate a transfer of the mortgage, without any delivery of that instrument or any regular assignment thereof. But it has been decided in this state, that when a partial assignment of the debt has been made, it is always a question of the intention of the parties, to be gathered from the circumstances at the time, whether any and how much of the mortgage was to pass by the assignment. *Langdon et al.* v. *Keith*, 9 Vt. 299. *Wright* v. *Parker et al.*,

2 Aik. 214. In the present case the agreement does not seem to have had any reference to the mortgage. No assignment of it was taken or proposed, nor had the defendants ever seen it, or made any request therefor.

As an assignee of the mortgage takes it subject to all the equities of the mortgagor against the mortgagee,—*Bank of Niagara* v. *Roosevelt et al.*, 9 Cow. 409,—had not Black, being equally conusant with Houghton of the trust attached to the notes, a claim upon Houghton, that they should not be divested from the trust? Could he have paid them to the defendants, with that knowledge, and so aid in a breach of the trust? *Clark* v. *Flint*, 22 Pick. 231. *Glidden* v. *Hunt*, 24 Pick. 221. So at law, with a note matured, taken in payment of a precedent debt, the indorsee, without notice, does not stand on the same firm ground with one who has paid a valuable consideration. *Coddington* v. *Bay*, 20 Johns. 637. *Rosa* v. *Brotherson*, 10 Wend. 85.

*Walker & Kellogg* for defendants.

When negotiable paper, not due, is transferred for a valuable consideration, and without notice of any fraud, or trust, the right of the holder shall prevail against the true owner. *Coddington* v. *Bay*, 20 Johns. 637. *Grant* v. *Vaughan*, 3 Burr. 1526. *Wheeler* v. *Guild*, 20 Pick. 545. *Swift* v. *Tyson*, 16 Pet. 1. We are aware, that it has been decided in New York, that a pre-existing debt, or liability, is not a sufficient consideration for the transfer of negotiable paper, as against the owner. *Coddington* v. *Bay*, 5 Johns. Ch. R. 56; 20 Johns. 637. *Rosa* v. *Brotherson*, 10 Wend. 85. *Smith* v. *Van Loan*, 16 Wend. 659. *Stalker* v. *McDonald*, 6 Hill 93. These cases are at variance with the weight of decisions in our own country, and with the English cases. *Grant* v. *Vaughan*, 3 Burr. 1526. *Peacock* v. *Rhodes*, Dougl. 633. 8 Taunt, 100. *Brush* v. *Scribner*, 11 Conn. 388. 2 Pet. 170. *Boehm* v. *Sterling*, 7 T. R. 423. 6 C. & P. 767. 4 Bing. 496. 9 Ad. & E. 275. 1 Bing. N. C. 469. *Coolidge* v. *Payson*, 2 Wheat. 66.

But in this case the transfer of the notes was good, even according to the New York authorities. Wood, Grant & Co. gave up their lien upon the certificate of deposite, and the reception of these notes was the express consideration upon which this was done.

The transfer of the notes being valid, the defendants have a right to the benefit of the mortgage, by which they are secured. The assignment of the debt carries with it the mortgage security; Fonbl. Eq. 526, n.; 2 Story's Eq. 285; and this may be by parol; *Pratt* ·*v. Bank of Bennington et al.,* 10 Vt. 293. Where part of the debt is assigned, as in this case, whether any interest in the mortgage, and what, passes to the assignee, depends upon the agreement between the mortgagee and assignee. *Wright* v. *Parker,* 2 Aik. 212. *Langdon et al.* v. *Keith,* 9 Vt. 299. Here it was expressly agreed, that the defendants were to have the benefit of the mortgage.

The opinion of the court was delivered by

HALL, J. There can be no doubt, but that there should be a decree of foreclosure against Black, for the sum due from him on all the notes. Whoever may be the owner of the notes, Black is absolutely liable for their payment, and the mortgage may be enforced against him for whatever sum remains due on them. The important questions in the case regard the respective rights and interests of Keyes and his wife, the administrator of Houghton, and Wood, Grant & Co., in the mortgage debt, and in the security for enforcing its payment.

The note of $500, which is found in the possession of Mrs. Keyes, must be presumed to have been delivered to her by Houghton, in execution of his trust; and she is doubtless entitled to the benefit of it. Assuming, what it seems probable an accounting will show to be the case, that, as against Houghton, she was also entitled to the amount of the two notes, which were passed by him to Wood, Grant & Co., the question is, whether she can be allowed to enforce her claim against them.

Although the two notes, in equity, belonged to Mrs. Keyes, yet they were payable to Houghton, or his order, and he, upon the face of them, appeared to be the owner. The notes being negotiable paper, he might transfer them, before they became due, for a valuable consideration, to any one having no notice of the trust, and such transfer would pass a good title to them, not only against Houghton, but also against Mrs. Keyes, the beneficiary of the trust. This doctrine is too well settled, to be controverted. It is said, however, that, by the law of New York, where the transfer of these notes was

made, a previous indebtedness of the indorser to the indorsee is not a sufficient consideration for the indorsement, as against the *cestui que trust,* but that the indorsee, in order to render such indorsement effectual, must have parted with something valuable, as the consideration therefor. If it be conceded, that such is the law of New York, and that it is binding upon these parties, it does not appear to us, that the plaintiff will be aided thereby. The notes were not passed as mere security for a pre-existing debt. Wood, Grant & Co. appear to have had other security for such debt, which they parted with and delivered to Houghton, when they received the notes. The doctrine, of which the plaintiffs claim the benefit, rests upon the ground, that the indorsee loses nothing by being deprived of his security,—that if it be taken from him, he is left in the precise situation he was in, when he received it. In this case such was not the fact. The bank certificate, which Wood, Grant & Co. exchanged with Houghton for the notes, will be lost to them, if the claim of the *cestui que trust* is allowed to prevail. In any view of the law, we think the defendants Wood, Grant & Co. must be considered as having acquired a perfect title to the notes, as against the plaintiffs, for the purposes for which they received them. Having been received as security, the plaintiff, Mrs. Keyes, is entitled, as Houghton would have been, to redeem them by paying the amount of the liability, for which they were pledged. But until Wood, Grant & Co. are thus paid, we think, they must be allowed to hold the notes and receive the pay on them.

The next inquiry is, what are the respective rights of the plaintiff, Mrs. Keyes, and the defendants Wood, Grant & Co., in the *mortgage security ?*

It is claimed in behalf of the plaintiffs, that, even if Wood, Grant & Co. have acquired a good title to .the notes, they have obtained none to the security, and that a decree should be made upon that basis. If Houghton had been the equitable and legal owner of the mortgage, and had transferred all the notes secured by it, retaining the mortgage in his hands, there can be no doubt, but that the assignee of the notes would, by the assignment of them, have become also the equitable assignee of the mortgage. The debt being the principal, and the security the incident, the transfer of the one carries with it the other. It may now be considered as well settled,

43

that if the debt be assigned, and there be no agreement to the contrary, the mortgage, in equity, goes with it. A delivery of the mortgage to the assignee of the debt does not appear to be necessary, to give him the benefit of it; for if it be retained by the mortgagee, he holds it as trustee for the assignee of the debt, and may be compelled to the performance of the trust. It seems, also, not to be indispensable, that the assignee of the debt should, at the time of the assignment, even know of the existence of the security; for it has been held, that whenever it comes to his knowledge, he may affirm the trust and enforce the security. *Pratt* v. *Bank of Bennington*, 10 Vt. 293. *Neilson* v. *Blight*, 1 Johns. Cas. 205. *Green* v. *Hart*, 1 Johns. 590. *Evertson* v. *Booth*, 19 Johns. 491. But an assignment of the mortgage, without the debt, passes no interest to the assignee, either in the debt, or the security.

The question arises, how far these principles are applicable to the assignment of a part of a debt, the whole of which is secured by mortgage. In *Langdon* v. *Keith*, 9 Vt. 300, it was said by the court, that when a part of the mortgage notes are assigned and a part retained, it was entirely matter of contract between the mortgagee and assignee, how far and for whose benefit the mortgage should be holden. In that case the mortgagee had sold *part* of the notes and with them had assigned the *whole* mortgage, and the assignee was therefore, by contract, entitled to the whole security, as between him and the mortgagee. But it was not determined, what would have been the rights of the assignee of a part of the notes, in the absence of any express contract in regard to the security. And the question, as to what contract the law would imply in regard to the security, upon the separation of the notes into the hands of different owners, does not appear to have been adjudicated in this state.

In *Pattison* v. *Hull*, 9 Cow. 747, it was held, that an assignment under seal from the mortgagee of a judgment, recovered upon one of several mortgage notes, passed to the assignee a corresponding interest in the mortgage security, and that parol evidence was inadmissible, to show that the assignor intended to reserve the mortgage. In *Donley* v. *Hays*, 17 Serg. & Rawle 400, a mortgage had been given to secure several bonds, and the mortgagee had assigned a part of the bonds, at different times, to different persons, but retain-

ing a part, together with the mortgage, in his own hands, there being no contract with the assignees in regard to the mortgage. The mortgaged premises having been afterwards sold on execution in favor of the mortgagee, it was held, that the proceeds of the sale should be applied upon the bonds *pro rata*, as well those which the mortgagee retained, as those he had assigned. 1 Hilliard's Real Estate 412. The doctrine of this case appears almost necessarily to follow from what has already been held in this state, and it seems also in accordance with the clearest principles of equity.

If the mortgagee sell all the notes specified in a mortgage to one person, we have already seen, that the mortgage passes with them, as incident to the debt. And why shall not a sale of a part of the notes carry with it a corresponding part of the mortgage? The security in the hands of the mortgagee is spread equally over the whole debt. It is incident to every part of the debt, to one part as much as to another, and it is difficult to perceive, why an assignment of a portion of the mortgage notes, in the absence of any contract to the contrary, should not be an assignment of a *pro rata* portion of the mortgage. It would seem, that the land would be as much appurtenant to the notes assigned, as to the notes retained; and we are disposed to hold, that, unless the mortgagee, on a transfer of a portion of the notes, chooses, by contract, to separate them from the security, the security, to the extent that it would attach to them in his hands, should accompany them to the assignee.

In this case, there being no evidence of any contract between Mrs. Keyes and Houghton, by which any of the notes were to have a preference, in regard to the security, over the others, the mortgage must be deemed to have been in her hands as equal security for all the notes. The sale and transfer, therefore, of the two notes by Houghton to Wood, Grant & Co., passed to them a corresponding portion of the mortgage, which they, with her, are entitled to enforce against the mortgagor.

It is claimed in behalf of Wood, Grant & Co., that, by contract with Houghton, their notes are to have priority in the security over the note in the hands of Mrs. Keyes. But we are not satisfied, that they are entitled to such priority. By the declaration of trust the note, which was placed in her hands, belonged in equity to her, and, as against Wood, Grant & Co., she is entitled to all the advantages

of a purchaser of the note for a valuable consideration. If the note were in her hands before Houghton's transfer to Wood, Grant & Co. of the other two notes, as we should perhaps find from the evidence, it would not, I think, have been in the power of Houghton, by any contract with Wood, Grant & Co., to deprive her of a *pro rata* interest in the mortgage. If Houghton had retained the mortgage in his hands, and had undertaken to assign the whole of it as security for the two notes, I cannot think such contract would have impaired her lien for the note in her possession. In such case the mortgage itself would have been notice to the purchaser of the two notes, that another note was embraced in the security, and I think the purchaser would be bound to inquire and ascertain the condition of such note, and that he would take his lien subject to any prior equity attached to such note in the hands of a *bona fide* holder. Wood, Grant & Co., having purchased without seeing the mortgage, could not well claim to stand in a better situation, than if they had received it and taken a written assignment of it. But it is unnecessary to decide the case on that ground, as we are not satisfied from the answer of Wood, Grant & Co., which furnishes all the evidence there is on that subject, that it was intended by Houghton to give them anything more than a *pro rata* interest in the security.

Upon the assumption, that Houghton, in his lifetime, received his full portion of the mortgage debt, and that the residue unpaid, as between him and Mrs. Keyes, belongs to her, she is entitled, with Wood, Grant & Co., to a foreclosure of the mortgage against Black; and in case the land is not redeemed they should hold the same as tenants in common in proportion to the amount of the principal and interest of the notes held by each. But Mrs. Keyes should have the right, before the time of payment of the redemption money by the mortgagor, to redeem the notes from Wood, Grant & Co., by paying the amount due them in equity from Houghton and upon such redemption of the notes by her, she will be entitled to receive from the mortgagor the sum due on all the notes.

If upon an accounting between Mrs. Keyes and the administrator of Houghton, it should turn out that Mrs. Keyes, from the note in her hands, together with the sum she would receive from Wood, Grant & Co., would obtain more than her share of the mortgage money, the overplus would belong to the estate of Houghton,

Keyes et ux. *v.* Wood et al.

We think the costs of this suit should be paid as follows. The mortgagor, not having been concerned in the litigation between the claimants to the mortgage security, ought not to be at the expense of it. He should therefore be taxed with only the costs of an ordinary bill of foreclosure. The plaintiffs should have their costs of the court of chancery and this court against the estate of Houghton, but none against the administrator personally. The plaintiffs, having failed in the main object of their bill against Wood, Grant & Co.,—that of obtaining the two notes discharged of their lien upon them,—are not entitled to costs against them ; but, if they redeem the notes, should pay their costs, both of this court and of the court of chancery,

The result is, that the decree of the court of chancery is to be reversed and the case remanded to that court to make a decree in conformity to the principles before stated,