GEORGE TORREY, Admr. of the Estate of Charles Morse,
*v.* T. J. DEAVITT, Admr. of the Estate of Betsey
Gifford, NATIONAL L. INS. CO., O. E. TITUS,
IRA GIFFORD, LEROY PLUMMER, and
LUCIUS and ALMIRA CUMMINGS.*

[ In Chancery. ]

*The Legal Assignee only can Discharge a Mortgage. The Assignment of a Mortgage must be Recorded. Trust.*

1. An assignee of a mortgage takes by a duly executed assignment thereof *an interest* in the mortgaged premises; therefore, *such assignment* by force of the statutes *may properly be recorded in the land records of the town where the mortgaged premises lie.*
2. Such record is constructive notice to subsequent purchasers and mortgagees, that the original mortgagee's right to discharge the mortgage has ceased.†
3. If such assignee of the mortgage debt fails to take an assignment of the mortgage and cause the same to be recorded, he places power in the hands of the original mortgagee to commit a fraud upon innocent parties, and must be postponed to the rights acquired by such parties, in good faith and without notice.
4. After an assignment of the *mortgage debt,* but not the mortgage, the mortgagee *holds the title to the mortgage premises in trust* for such assignee.
5. When the purchaser acts in good faith, and has no notice that the vendor holds the property in trust, he obtains a title paramount to the undisclosed trust.
6. The legal assignee (not the equitable) is the proper party to make the discharge of the mortgage.

At the December Term, 1879, before Barrett, Chancellor, this case came on for hearing, on the bill to foreclose the mortgage, answers and evidence; and it was decreed, *pro forma*, that the defendants redeem the orator's mortgage claim, or be foreclosed.

The facts sufficiently appear in the opinion of the court, except the following. The date of the mortgage, sought to be foreclosed, was, August 31st, 1866; and discharged on the records, Jan.

---

* Heard at the February Term, 1880.

† Where a party takes an assignment of a note and mortgage, whether the fact, that these instruments are not in the possession of the assignor is sufficient to put the *assignee* upon *inquiry.* See *O'Mulcahy* v. *Knapp,* decided by the Sup. Ct. of Minn. May, 1881. Reporter, July 13, 1881, p. 51.—Rep.

21st, 1871, (the same day that the mortgage to the Insurance Co. was given,) by the mortgagee. The defendant, Almira Cummings, purchased the mortgage of the Insurance Co. in January, 1876 ; and it was admitted that she had no knowledge of the orator's claim whatever, except what could be derived from the record in the town clerk's office.

*J. J. Wilson*, for the orator.

No written assignment of the mortgage, or record thereof, is required to protect the assignee. *Pratt* v. *Bank of Bennington*, 10 Vt. 293 ; *Keyes* v. *Wood et al.*, 21 Ib. 340 ; *Slocum* v. *Catlin*, 22 Ib. 139 ; *Nash et al.* v. *Kelley et al.*, 50 Ib. 425 ; *Sprague* v. *Rockwell et al.*, 51 Ib., 402 ; *Belding* v. *Manley*, 21 Ib., 557. Almira Cummings took the mortgage subject to all equities. *Downer* v. *Royalton Bank*, 39 Vt. 25 ; 15 L. & Eq., 101 ; 13 E. L. & E., 82. The elder title prevails, where each party has only an equitable title. 39 Vt., 25 ; 2 Johns. Ch., 608 ; 18 Wend., 240 ; 9 Paige, 76 ; 10 Peters, 177 ; 7 Ib., 271 ; 2 Lead. Cas. in E., 80 ; Swift's Dig., 442 ; 4 Richardson's Eq. ; 17 How., 502.

*T. J. Deavitt*, for the defendants.

The petitioners should ask to have the discharge on the record vacated. *Gordon* v. *Mulhare*, 13 Wis., 22 ; Wait's Act. & Def., 4, 549 ; Charles Morse allowed his son-in-law to act, and appear to be, his agent, or to own the mortgage, and his estate is now estopped from denying his right, or authority, to discharge. *McCabe* v. *Farnsworth et al.*, 27 Mich., 52 ; Jones Mort. 1, 819 ; 1 Edw. Ch., N. Y., 132. The defendants took their mortgages after the mortgage in this suit had been discharged, in ignorance of the fact that the original mortgage had not been paid, acting in good faith ; they, therefore, have the better title. Jones Mort., 1, 820 ; *Bank* v. *Anderson*, 14 Iowa, 544 ; *Bowling* v. *Cook et al.*, 39 Iowa, 200 ; 35 Barb., 330 ; *Bowman* v. *Manter*, 33 N. H., 530.

The opinion of the court was delivered by

Ross, J. The statute prescribes the formalities with which a deed of real estate, to secure the payment of a loan of money, must

be executed in order to be effective against subsequent purchasers and attaching creditors; among which is the record of the deed in the land records of the town where the real estate is situated. It also prescribes two methods by which such a deed may be discharged; first: "by an entry on the margin of the record thereof, in the record of deeds, signed by the mortgagee, or his attorney, executor, administrator, or assignee, acknowledging satisfaction of the mortgage;" and declares, "such entry shall have the same effect as a deed of release duly acknowledged and recorded;" and secondly: "by the mortgagee or his attorney, executor, administrator or assignee, acknowledging payment thereof by an entry on the mortgage deed, signing the same, and affixing his seal thereto, in the presence of one or more witnesses, which entry, upon being recorded on the margin of the record of such mortgage in the record of deeds, shall discharge such mortgage and perpetually bar all actions brought thereon." The mortgage sought to be foreclosed by the orator, was discharged upon the record in the method first set forth as of the date of January 21, 1871, by the mortgagee, who then had the mortgage in his possession, and who subsequently delivered it to the mortgagor, of whom the defendant Deavitt is administrator. At the same date the mortgage to the National Life Insurance Company, now owned by defendant Almira Cummings, was executed, and that company advanced the mortgagors $2,500, with which to pay off the mortgage in suit, and another mortgage resting thereon. The company paid the money to the mortgagee, E. M. Gifford, on his agreement to discharge the mortgage sought to be foreclosed, if he did not then discharge it, and his further agreement to have the other mortgage on the premises discharged. The other mortgage was properly discharged a few days thereafter. From the entry on the record, and the evidence in the case, we think the Gifford mortgage was discharged the day it purports to be, January 21, 1871. There is no such proof as would warrant the court in reforming the record of the discharge; neither is there a balance of testimony in favor of the claim that it was made subsequently to that date. It seems incredible that Mr. Gifford should have hesitated to make the discharge that day, because some of the notes se-

cured thereby were unpaid, when he had the money in his hands with which to pay all said notes, and according to his account all of the notes were subject to his control, and thereafter have made the discharge so readily, when he had used up the money appropriated for the payment of the two notes in suit, in payment of another demand, on which he was holden as surety for the mortgagor, and left these notes outstanding. Nor can it be well accounted for, that Mr. Bingham should have advanced the $2,500 to the mortgagee for the Insurance Company, if the mortgagee had declined to discharge his mortgage upon the record. He might well have felt safe in trusting to Gifford's agreement to see to paying over the money on the small mortgage to Welch, and obtaining the discharge thereof. The mortgagee did not produce the notes secured by the mortgage at the time he discharged the mortgage on the record, but informed the agent of the Insurance Company that the notes were within his control. We are satisfied that all the mortgage notes were then within his control, notwithstanding he had then sold the two now sought to be foreclosed to his father-in-law, whose estate the orators represent. Gifford, the mortgagee, held such relations to the intestate, that if he had carried the money furnished by the Insurance Company for the payment of these notes to him, he would have received the money, although the notes were not then due. The notes are payable to bearer, and passed by delivery to the intestate, and passed as incident thereto,—no agreement being shown to the contrary—a proportionate interest in the mortgage security. For this purpose no assignment of the mortgage was necessary. Thenceforward the mortgagee held the mortgage *pro tanto*, in trust for the benefit of the intestate. There is no explanation of how or when the endorsement, on each of the notes, signed by E. M. Gifford, by which he warrants the notes good until paid, was placed on the notes. A suspicion is raised that it might have been done when he concluded to use the money furnished for their payment to pay another debt, on which he was holden as surety for the mortgagor, and that the intestate was made aware of the fact of the discharge of the mortgage by E. M. Gifford on the record, consented to the same, and took the endorsement in substitution for

the mortgage security.   E. M. Gifford was then supposed to be financially responsible.   Unless something of the kind transpired it is difficult to account for the non-action of the intestate in his lifetime, or for the delivery of the mortgage by E. M. Gifford to the mortgagors.   But if nothing of the kind transpired, on the orator's theory, the intestate left the mortgage within the control of the mortgagee, and thus placed it in the power of the mortgagee to practice a fraud upon an innocent party, by discharging the same, either upon the record, or upon the mortgage deed itself.   Although the mortgagee did not produce the notes secured by the mortgage when he discharged the same upon the record, there is nothing to impeach the good faith of the Insurance Company in the transaction.   Its agent was told by the mortgagee that he had all the mortgage notes within his control, and it furnished him the money in payment of them all.   On his own testimony the mortgagee did not disclose to the agent of the Insurance Company that he held the mortgage security in trust for the intestate, or any other person.   He excused the non-production of the mortgage notes by saying they were in his control, though not present, and the mortgagors were satisfied therewith.   When the purchaser acts in good faith, and has no notice that the vendor holds the property in trust, he obtains a valid title to the property, paramount to the undisclosed trust.   *Keyes et ux.* v. *Wood et at.*, 21 Vt. 331 ; 1 Jones Mortg., s. 820.   In this section the author states the well-recognized doctrine, that the mortgage is an incident to the mortgage debt ; that no assignment thereof is necessary between the parties or others having actual notice of the assignment of the notes ; and that the mortgagor is legally charged with knowledge that this may be done, and should require the production of the notes before paying the mortgage debt on a discharge of the mortgage, and then says : " But if the mortgagee, while the notes are in the hands of the assignee, cancels the mortgage on receiving payment from the mortgagor, who then makes conveyance, or a new mortgage, to another person, who acts in good faith and in ignorance of the fact that the original mortgage had not been paid to the proper party, such purchaser or subsequent mortgagee has the better title.   Such subsequent

purchaser or mortgagee is not bound to take notice of an assignment by transfer of the notes alone. The assignee of the notes can easily protect himself by requiring an assignment of the mortgage and recording it, and thus give notice of his rights; and if he omits to do this, he should be the party to suffer for the negligence." On this doctrine, the mortgage to the Insurance Company, and the two subsequent mortgages, all having been taken in good faith, without notice, actual or constructive, that the notes sought to be foreclosed had been assigned to the intestate, take precedence of the mortgage sought to be foreclosed. But the orator's solicitor contends that this doctrine is not applicable in this State; because the statute is silent in regard to recording assignments of mortgages; and because it has been repeatedly held, and is well settled, that in equity an assignment of the mortgage debt carries with it as an incident the mortgage security. He thereupon reasons that the record of an assignment of a mortgage, duly executed agreeably to the statute for conveying real estate, would not be constructive notice to subsequent mortgagees and purchasers. It was long since decided that such an assignment of a mortgage is necessary to enable the assignee to maintain an action at law upon the mortgage. Such an assignment must therefore convey to the assignee a legal interest in the mortgage premises. By s. 8, c. 4, Gen. Sts.,* the words, "land" or "lands," and "real estate," are defined to mean, "lands, tenements and hereditaments, and all rights thereto and interests therein." By s. 32, c. 15,† the town clerk is required to record all "deeds and *other instruments and evidences respecting real estate.*"

By s. 4, c. 65,‡ it is enacted: "All deeds and other conveyances of lands, or *of any estate or interest therein,* shall be signed and sealed . . . . . and recorded at length, in the clerk's office of the town in which such lands lie." The assignee of a subsisting mortgage takes, by a duly executed assignment thereof, *an interest* in the mortgage premises, for himself, if he holds any portion of the mortgage debt, and for whoever holds any of the unpaid mortgage debt. Hence, all the foregoing provisions of the statute are applicable and give force to the record of such an

---

* R. L. sec. 9.           † R. L. sec. 2679.           ‡ R. L. sec. 1927.

assignment. The statute relating to the discharging of mortgages, speaks of the "assignee" as a proper party to make the discharge. This must have reference, not to the equitable assignee, but to the legal assignee, one shown to be such by a legally executed and recorded assignment of the mortgage. It may be questioned whether a discharge upon the record by an equitable assignee, gives to the mortgagor a perfected record title to the mortgage premises. The record of itself would not in such a case, show any legal right in him to make the discharge. His power to make the discharge would rest in parol to be proved by evidence *aliunde* the record. It is evident, we think, from these provisions of the statute, that a legally executed assignment of a mortgage is a proper instrument to be recorded in the land records of the town, where the mortgaged premises lie; and that its record is constructive notice to subsequent purchasers and mortgagees, that the original mortgagee's right to discharge the mortgage has ceased. The assignee by such action and precaution, can protect himself against any unlawful discharge of the mortgage by the original mortgagee. If the assignee of the mortgage debt fails to take such precaution, he is guilty of negligence, and places power in the hands of the original mortgagee to commit a fraud upon innocent parties, and must be postponed to the rights acquired by such parties in good faith, without notice of his antecedent rights in the premises. These views render the consideration of other questions made on argument immaterial.

The decree of the Court of Chancery is reversed, and cause remanded with a mandate to enter a decree for the orators only against those parties, who hold the equity of redemption of the premises, subsequent to the mortgage to the Insurance Company, now held by Almira Cummings, the mortgage to Lucius Cummings and to E. O. Titus, and dismissing the bill as to the holders of these mortgages, unless the orators desire to redeem the same.