HUDSON WILSON *vs.* CHARLES EIGENBRODT, Guardian, impleaded, etc.

November 10, 1882.

**Mortgage—Several Notes Assigned to Different Persons — Security Applied Pro Rata.**—Where several notes maturing at different dates secured by one mortgage are assigned to different parties at different times, and the proceeds of the mortgaged property is insufficient to pay all in full, such proceeds should, in the absence of any contract for a different order, be applied *pro rata* towards the payment of all the notes, without regard to the time they matured, or the order as to time in which they were assigned.

**Same—Recording Assignment — Notice on Face of Mortgage.**— The mortgagee, having assigned one of the notes secured by the mortgage to one person, afterwards assigned the other note and the whole mortgage to another party, whose assignment was placed on record. *Held,* that the latter was not protected as against the first assignee as an innocent purchaser under the recording act, because the mortgage itself was notice to him of the existence of the note.

Action to foreclose a mortgage; trial in the district court for Waseca county, *Buckham*, J., presiding.

On June 1, 1878, defendant Wallace made and delivered to one Oehler his two promissory notes, each for $733, dated the same day and payable, respectively, January 1, 1879, and January 1, 1880, and, to secure the payment of the same, also made and delivered to Oehler a mortgage upon certain land in Waseca county. The mortgage was conditioned for the payment of "the sum of $1,466, and interest, according to the conditions of two promissory notes for $733 each, of even date herewith," and was recorded on November 18, 1878. On June 20, 1878, Oehler sold and delivered to defendant Charles Eigenbrodt, as guardian, (without endorsement,) for a good and valuable consideration, the note becoming due on January 1, 1880, representing that it was secured by mortgage on real estate, agreeing to assign the mortgage, and not disclosing the fact that the mortgage secured two notes; and Eigenbrodt accepted the note in ignorance of the existence of the other note. On July 16, 1878, for

a valuable consideration, Oehler sold and endorsed the note first becoming due to one Loyhed, representing that it was secured by real estate mortgage, agreeing to assign the same, and stating that the mortgage also secured another note, which he, Oehler, still owned, and which became due at a later date. Loyhed purchased relying on these representations. On November 13, 1878, Oehler assigned the mortgage to Loyhed, and on May 7, 1879, the assignment was duly recorded. On May 6, 1879, Loyhed, for a valuable consideration, assigned the note which he held and the mortgage to plaintiff, and this assignment was duly recorded on May 9, 1879. Oehler is insolvent, and the real estate security is insufficient to pay both notes. These facts appearing, judgment was ordered and entered for the sale of the mortgaged land, and the application of the proceeds upon the two notes, *pro rata*, and the plaintiff appealed.

*A. D. Keyes,* for appellant.

The note first maturing should be paid first. This rule is laid down in Alabama, Florida, Illinois, Indiana, Iowa, Kansas, Missouri, New Hampshire, Ohio, Vermont, Virginia, West Virginia, and Wisconsin. 2 Jones on Mortgages, §§ 1699, 1700; *Pierce* v. *Shaw,* 51 Wis. 316; Gen. St. 1878, c. 81, § 4; c. 40, § 21; *Cochran* v. *Stewart,* 21 Minn. 435; *Fowler* v. *Johnson,* 26 Minn. 338; *Standish* v. *Vosberg,* 27 Minn. 175.

*R. A. Mott,* for respondent.

MITCHELL, J.*A mortgage was executed to secure two notes maturing at different dates. The mortgagee assigned the note *maturing last* to defendant, and afterwards assigned the mortgage and the note *maturing first* to one Loyhed, who assigned to plaintiff. The mortgage contained no stipulation as to giving either note priority or precedence in the order of payment out of the security. The proceeds of the mortgaged property being insufficient to pay both notes in full, the question which arises in this case is, in what order should these proceeds be applied?

All the authorities agree that the order in which several notes or instalments, secured by one mortgage, shall be paid out of the pro-

*Berry, J., being disqualified because of affinity to one of the parties, took no part in this case.

ceeds of the security, is entirely a matter of contract; that the parties, at the time of the execution of the mortgage, may contract for any order of payment they see fit; and that the mortgagee, when he assigns the notes, may by contract fix any order of payment as between himself and his assignee, or between his several assignees, that they may agree upon; but as to what order the law should adopt as the implied agreement of the parties, where their contract is silent upon the subject, there is much conflict of authority. One line of decisions holds that where several notes maturing at different dates and secured by one mortgage are assigned to different persons at different times, they must, in the absence of anything in the contract showing an intention to adopt a different order, be paid *in the order in which they were assigned,* the first assignee in point of time being entitled to a priority. The cases adopting this rule usually place it upon the ground that, in the act of assigning a note secured by a mortgage, there is an implied agreement on the part of the assignor that his assignee shall have the benefit of the security to the extent necessary to pay the note assigned, and therefore that the assignment of the note operates as an assignment of the security *pro tanto,* and not merely *pro rata.* But, inasmuch as the mortgage stands equally as security for *all* the notes, we fail to see how the mere act of assigning one of them can raise any presumption that the parties intended that it should operate as an assignment of any more than its *pro rata* proportion of the security.

Another line of cases holds that the notes are entitled to priority of payment *in the order in which they mature.*¹ The argument usually advanced in support of this rule is that the different instalments are to be regarded as so many *successive* mortgages, each having priority according to the time of maturity. This seems to us a gross misapplication of the maxim that "he who is first in time has the better right." The different instalments are not secured by different mortgages of different dates, but by one mortgage executed equally for the benefit of all the instalments. The date of the lien is the date of the mortgage, and not the date of the maturity of the debt. If the doctrine of the cases referred to be correct, then, on the same principle, it seems to us it would follow that if separate mortgages were exe-

cuted contemporaneously to different persons, to secure different debts maturing at different dates, the mortgagee whose debt first matured would be entitled to precedence. Sometimes the law of the remedy is invoked as an argument in favor of this rule, the suggestion being that a right of action to foreclose first arises on the instalment first maturing, and therefore it takes precedence. We fail to see any force in this suggestion; for the rights of the parties under the lien of the mortgage date from the date of the mortgage, and not from the time the cause of action accrues under it. It is true that when the first instalment becomes due the other instalments are *solvendum in futuro,* but they are also *debitum in præsenti.*

In the present case we are referred to Gen. St. 1878, *c.* 81, § 4, as decisive in favor of the priority of the note first maturing, because it provides that, in case of foreclosure for an instalment, the proceeds of the sale, *after satisfying the instalment due,* shall be applied towards the payment of the residue of the sum secured and not yet due. We do not think this statute affects the question now under consideration. It is but declaratory of the equity rule in case of foreclosure by suit, and applies it to statutory foreclosures under a power of sale. It settles the order of the application of the proceeds of the sale as between the parties to the mortgage, but does not assume to determine or alter the rights of the different holders of the mortgage debt as between themselves. Whether, as suggested, any difficulty might arise in such a case under our redemption statute, it is not necessary now to consider. If there should, it would not be the first one that has arisen under it.

The other and third class of decisions holds that, in the absence of anything showing an intention that a different order should be followed, all the notes or instalments secured by one mortgage should be paid *pro rata* out of the proceeds of the security, without regard to the dates of their assignment, or the times of their maturity. We adopt this rule as being not only the more equitable, but also as sound in principle, because in accordance with the implied intention of the parties as inferable from the nature of the contract. The mortgage is as much security for one note as another. There is no priority of lien in favor of one as against another, for the mortgage is one; and

the mortgage being a mere incident to the debt, an assignment of a part of a debt carries with it a *pro rata* proportion of the security. The different holders of the mortgage debt, therefore, stand *æquali jure,* and consequently are entitled to participate *pari passu* in the fund derived from the security. Among the great number of cases on this question that might be referred to, see *Donley* v. *Hays,* 17 Serg. & R. 400; *Hancock's Appeal,* 34 Pa. St. 155; *Keyes* v. *Wood,* 21 Vt. 331; *Belding* v. *Manly,* Id. 550.

From what has been said it follows that the assignment of one note to defendant operated as an assignment to him of a *pro rata* share of the mortgage, of which he could not be subsequently divested by the attempt of his assignor to transfer the whole mortgage to plaintiff's assignor, Loyhed, unless the latter and his assignee are protected as innocent purchasers for value under the recording acts. But they do not stand in any such position. The mortgage itself was notice to them of the existence of the other note, and they were bound to inquire and ascertain its condition. If they bought without inquiry, or accepted the statement of the mortgagee without requiring him to produce the other note, they did so at their peril. *Moore* v. *Ware,* 38 Me. 496; *Phelan* v. *Olney,* 6 Cal. 478; *Keyes* v. *Wood, supra; Roberts* v. *Halstead,* 9 Pa. St. 32.

Judgment affirmed.