Commercial Bank of Union City, Ind., v. Jackson, *et al.*

1. Where a deed and a declaration of trust were executed in the state of Indiana, under the laws of which the transaction was void, and subsequently a new deed of the same property was executed in the state of Illinois, where such a transaction was legal, and, as found by the referee, was made for the purpose of enabling the grantee to give a good title to the land described in said deed, and "did not change the legal relation of the parties," but no new declaration of trust was executed, *held*, that the transaction in the state of Illinois had the effect to legalize the entire transaction, and that the declaration of trust is to be regarded as though re-executed in the state of Illinois, and attached to, and constituting a part of, the Illinois transaction.

2. The several holders of promissory notes secured by the same mortgage, though such notes mature at different times, in the absence of an express agreement to the contrary, are entitled to share pro rata the proceeds arising from a sale of the mortgaged premises. Section 5413, Comp. Laws, construed.

(Syllabus by the Court.   Opinion filed May 25, 1895.)

Appeal from circuit court, Minnehaha county.   Hon. Frank R. Aikens, Judge.

Action to foreclose a mortgage.   From a judgment for plaintiff, defendant Jackson appeals.   Modified.

The facts are stated in the opinion.

*Davis, Lyon & Gates*, for appellant.

By the "Comity of Nations" the laws of one state must be recognized and executed in another where the rights of individuals are concerned.   Burns v. Railroad, 113 Ind. 166; 3 Am. and Eng. Enc. 503; Usher v. Railroad, 4 L. R. A. 261; Robinson v. Queen, 3 L. R. A. 214; Osgood v. Baucher, 1 L. R. A. 655; Bible v. Healy, 10 L. R. A. 766; DeSobry v. DeListry, 3 Harris and Johnson, 191; Scoville v. Canfield, 14 Johns, 338; Fordam v. Thornton, 2 English, 224; Speed v. May, 17 Pa. 91; Hefferlin v. Sinsinderfer, 2 Kan. 401; Downer v. Cheesbrough, 36 Conn. 39.

If a contract is void or illegal by the law in the place where made, it is void everywhere.   Ivey v. Lalland, 42 Miss. 444; Kan-

oza v. Taylor, 7 Ohio, 134; Satterthwait v. Doughty, 59 Am. Dec. 554; Ford v. State, 6 Bush. 133.

*Stoddard & Wilson,* for respondent.

The validity of a mortgage of land is to be governed by the law of that state where the land is situated, although the parties may reside and the instruments be executed in another state. Swank v. Hufnagle, 12 N. E. 303; Goddard v. Sawyer, 9 Allen, 78; U. S. v. Fox, 94 U. S. 320; Brine v. Insurance, 96 U. S. 627; Cockran v. Benton, 126 Ind. 60. Statutes which either give or destroy capacity to contract have, as a general rule, no extra-territorial force, where the particular contract involved relates to the conveyance or encumbering of real estate situate in a foreign jurisdiction. Brown v. Bank, 43 Ohio, 269; Otis v. Gregory, 111 Ind. 504; Post v. Bank, 28 N. E. 978; Custin v. City, 30 N. W. 515; Garretson v. Tillinghast, 18 Cal. 404. A mortgagee holding two or more notes secured by one mortgage can transfer the mortgage and one note, so as to give that note priority in satisfaction out of the mortgaged property, and an endorsement of one note, with an assignment of the mortgage, is sufficient, in the absence of all circumstances indicating a contrary intention, to give the holder of such note priority. Jones on Chattel Mortgages § 822; Langdon v. Keith, 9 Vt. 299; Wright v. Parker, 2 Aikens, 212; Cooper v. Ulman, Walker Ch. 251; Bank v. Tarleton, 23 Mist. 173; McLean's Appeal, 103 Pa. 255; Walker v. Dement, 42 Ill. 272; Folley v. Rose, 123 Mass. 557; Solberg v. Wright, 33 Minn. 224; Grattan v. Wiggins, 23 Cal. 16; Bank v. Bank, 9 Wend. 410; Eastman v. Foster, 8 Metc. 19; Richardson v. McKim, 20 Kans. 346; Noyes v. White, 9 Kas. 640; Thayer's Appeal, 9 Atl. 498.

CORSON, P. J. This was an action to foreclose a mortgage for something over $12,000, principal and interest. Judgment for plaintiff, and the defendant Lydia E. Jackson appeals. The principal question involved is as to the ownership of two of the notes and the mortgage in controversy. The transactions resulting in the giving of the notes and mortgage are somewhat complicated,

but may be briefly stated as follows: The plaintiff bank · was en-
gaged in the business of banking in Union City, state of Indiana,
and one James F. Rubey was its cashier. The defendant Lydia
E. Jackson and her husband were also residents of Union City, in
that state. In January, 1890, Joseph R. Jackson, the husband of
Lydia E. Jackson, being indebted to said plaintiff bank in about
the sum of $7,000, Mrs. Jackson, who was the owner in her own
right of 160 acres of land in Minnehaha county, near the city of
Sioux Falls, executed a warranty deed, in which her husband
joined, of the said Dakota property to the said James F. Rubey,
the cashier of the plaintiff bank. And thereupon the said Rubey
delivered to Mrs. Jackson a declaration of trust, the material parts
of which are as follows: "January 22, 1890. I have received from
Lydia E. Jackson and Joseph R. Jackson a deed for 160 acres (more
or less) of land in Minnehaha county, South Dakota, * * * which
land I hold in trust as security for the payment of said Jackson's
indebtedness to the Commercial Bank of Union City, as evidenced
by notes, now held by said bank. * · * * In case the foregoing
condition of this trust is not complied with, then I am to reconvey
said land to said Lydia E. Jackson, in case there shall be paid to.
me on or before April 15, 1890, the sum of seven thousand five
hundred dollars. Any sum of money that may come into my
hands as trustee herein is to be paid by me to the Commercial
Bank of Union City, to be applied," etc. This deed and declara-
tion of trust were executed and delivered in said Union City, state
of Indiana. On December 31, 1890, the said defendant Lydia E
Jackson and her husband executed a second warranty deed to Ru-
bey for the same property, in the city of Chicago, state of Illinois,
to enable him to give a good title to the property. About this
time Mrs. Jackson, through one Wright, a real-estate agent of
Chicago, made a sale of the property to one Meredith, and Rubey
executed a deed therefor. On this sale Meredith paid $6,000 in
cash, and executed four notes,—two for $3,000 each, and two for
$2,000 each,—and secured the same by a mortgage upon the prop-
erty. These notes and mortgages were all made payable to said

James F. Rubey, and the ownership of the two $3,000 notes is one of the subjects of controversy in this appeal, Mrs. Jackson having been found to be the owner of the two $2,000 notes. Upon the sale of the property the said Rubey paid to the plaintiff bank $5,000 of the cash paid by Meredith ($1,000 having been paid as commission to the agent, Wright), and the bank applied it upon the indebtedness of said appellant and Joseph R. Jackson, her husband. Said Rubey also transferred to said bank the two $3,000 notes absolutely, in payment of the indebtedness of Jackson and the indebtedness of Mrs. Jackson, and also transferred to the bank the two $2,000 notes as collateral security. In the spring of 1891, said Rubey gave to Mrs. Jackson a statement of the accounts, in which he credits her with the $5,000 cash and $6,000 in the two notes, and a small amount of interest, and charged her with $7,500 paid to the bank on said Joseph R. Jackson's indebtedness, and the amount for which Mrs. Jackson was individually indebted to the bank, making a total of $10,474.49, and leaving a balance due her of $555.51, which he paid to her by check, which she collected and retained. In the fall of 1892 the bank commenced this action to foreclose the Meredith Mortgage, and Mrs. Jackson was made a party. She, in her answer, set up, in substance, the facts above stated, and also alleged: That said transfer of said notes and mortgage to the plaintiff bank was made in the state of Indiana, and was subject to the laws of said state. That section 5119 of the Revised Statutes of Indiana, enacted in the year 1881 (section 6964, Rev. St. 1894), and still in force, provides as follows: 'A married woman shall not enter into any contract of suretyship either as endorser, guarantor, or in any other manner, and such contract as to her shall be void.' That by virtue of said statute said transfer of the notes and mortgage to the plaintiff bank as aforesaid is absolutely void, as to her, and that she is still the owner of said notes and mortgage, and entitled to the proceeds thereof." Demand of Judgment was for the amount due upon said notes, and a sale of the property, and the payment of the proceeds to her, in the usual form.

The case was referred to a referee, who found that Mrs. Jacksan was entitled to the two $2,000 notes, but in favor of the plaintiff on the two $3,000 notes; and the report of the referee was confirmed by the circuit court, and a judgment rendered thereon in favor of the plaintiff. The referee found that the deed and declaration of trust constituted under the laws of this state a mortgage. Only two other findings need be given upon this question, as he found the facts substantially as above stated. These findings are as follows: "(22) That on the 31st day of December, 1890, the defendant Lydia E. Jackson and her husband, Joseph R. Jackson, executed and delivered to James F. Rubey the following warranty deed: * * * · Said deed was, at Chicago, in the state of Illinois, on the 31st day of December, 1890, duly signed and acknowledged by the said Lydia E. Jackson and Joseph R. Jackson, and was afterwards, on the 22d day of December, 1892, duly recorded. (23) That the execution and delivery of said deed was for the purpose of enabling said James F. Rubey to give a good title to the land therein described to the defendant E. B. Meredith, and did not change the original legal relations of Lydia E. Jackson and James F. Rubey."

The learned counsel for the defendant contends, first, that conceding that the original transaction between Mrs. Jackson and Mr. Rubey constituted a valid mortgage, interpreted by the laws of this state, and that the conveyance to Meredith, and his mortgage, were valid under the laws of this state, so far as they affect the real property of Mrs. Jackson, still these facts do not affect the question here involved, namely, the ownership of the notes and mortgage in controversy in this action, as the right to these must be determined by the law of Indiana, where the parties were domiciled, and the contract of suretyship was made. In other words, while the title to the land depends upon the law of this state, the ownership of the notes and mortgage depends upon the law of the state of Indiana. The learned counsel for the respondent insist that, this being a contract for the conveyance of real property situated in this state, it must be governed entirely by the law of this

state, and that our courts will not investigate or determine the legality of the transaction, as between Mrs. Jackson and Mr. Rubey and the bank, under the laws of Indiana. They also insist that as the notes in controversy were absolutely transferred to the bank in payment of Mrs. Jackson's indebtedness, and an account rendered to Jackson, to which she made no objection, she cannot, in this action, be heard to claim the notes. They also insist that if the original contract was void under the laws of Indiana, and Mrs. Jackson could have recovered the notes and mortgage in this action, on account of the illegality of the original contract, still she is now estopped by reason of the execution of the second deed to Rubey in Chicago, and that by that act she legalized the original contract, or made, in effect, a new contract, perfectly legal and valid under the laws of the state of Illinois.

That the law of the sovereignty in which real property is situated governs, as to the transfer of such property, whether conveyed absolutely, or by way of mortgage, seems to be well settled. Story, Confl. Laws, §§ 363-365, 424; 3 Am. & Eng. Enc. Law, pp. 563, 567, 662; Jones, Mortg. §§ 661, 823; Swank v. Hufnagle, 111 Ind. 453, 12 N. E. 303; Otis v. Gregory, 111 Ind. 504, 13 N. E. 39; Brown v. Bank, 44 Ohio St. 269, 6 N. E. 648; Post v. Bank, (Ill. Sup.) 28 N. E. 978; Goddard v. Sawyer, 9 Allen, 78; U. S. v. Crosby, 7 Cranch, 115; U. S. v. Fox, 94 U. S. 320. It is equally well settled that the validity or invalidity of all contracts is to be governed by the law of the places in which they are made, unless to be performed elsewhere. But, as we have seen, no question is raised by the counsel for the appellant as to the validity of the sale of the property to Meredith, and his mortgage, under the laws of this state; but the counsel contend that in determining the question as to the ownership of the notes, and as to the party entitled to the money arising from a sale of the mortgaged property, the courts of this state can and should take into consideration the nature of the original contract, and its validity under the laws of the state of Indiana, where the original contract was made, and, if they find the contract invalid under the laws of that state, then

the notes belong to Mrs. Jackson.   There would be much force in appellant's contention, if the transaction rested entirely upon the original contract made in the state of Indiana; for while the law of this state would govern as to the transfer of the property, and in determining the validity of the mortgage, yet no question being raised as to these, and the only question being as to the ownership of the notes; there would seem to be plausibility in the argument that this question should be determined by the laws of Indiana, where the original contract was made, and if the transaction was void there the bank would necessarily hold the notes as trustee for Mrs. Jackson, as its title to the notes could only be maintained by disclosing a transaction in the state of Indiana that by the laws of that state is declared absolutely void.   It being conceded that the deed and mortgage were valid by the laws of this state, it would be entirely immaterial to Meredith, the purchaser and mortgagor, to whom the money due on the notes and mortgage was paid.   Hence he is not interested in the controversy between Mrs. Jackson and the bank, as it in no manner affects him. But, in the view we take of the case, it is not necessary to decide whether or not the law of Indiana should control the court in determining as to the ownership of the notes, as we are of the opinion that the second transaction in Chicago, and the execution of the second warranty deed, had the effect to cure the infirmity of the original transaction, and render it valid.   As found by the referee, this transaction in Chicago "did not change the originial legal relations of Lydia E. Jackson to James F. Rubey."   That is, the transaction still continued as a mortgage, and the relation between the parties still existed,—of mortgagor and mortgagee. But a deed that was invalid under the laws of Indiana was superseded by a valid deed under the laws of Illinois; for, in the absence of evidence to the contrary, we must presume that the law of Illinois is the same as our own, as to the liability of married women upon their contracts.   Meuer v. Railway Co. (S. D.) 59 N. W. 945; Sandmeyer v. Insurance Co. (S. D.) 50 N. W. 353.   It is true that upon the execution of the second deed no new declara-

tion of trust was executed by Rubey, but is the fact that Rubey made no new declaration of trust material? It seems to us not. The main feature of the transaction was the conveyance of the property, either as actual payment of her husband's indebtedness, or as a mortgage to secure such payment. Upon its face, the deed constituted an absolute conveyance. To show, therefore, that it is not such, Mrs. Jackson is compelled to reply upon the declaration of trust executed by Rubey. She cannot be permitted to insist that the instrument is void, and at the same time seek to protect her rights by relying upon it. The referee finds—and such was evidently the fact—"that the execution and delivery of said deed was for the purpose of enabling James F. Rubey to give a good title to the land described therein to the defendant E. B. Meredith." Is it not fair, therefore, to presume that it was the intention of both Mrs. Jackson and Mr. Rubey to make a transaction, that under the laws of Indiana was invalid, valid, by remaking the contract under the laws of Illinois? They carried out that intention so far as to make the second warranty deed, and we think the presumption is a legitimate one that it was the understanding of the parties that the Chicago transaction was to take the place of the Indiana transaction, and be an entire substitute for it. Of course, if the declaration of trust made by Rubey had been redated and delivered in Chicago, there would be no question as to the real intention of the parties. But, be this as it may, Mrs. Jackson, by her second deed made in Chicago nearly a year after the first deed was made, must be conclusively presumed to have intended to make a valid and binding contract with the bank, through its cashier, if not to make an absolute conveyance, to at least bind herself to pay her husband's indebtedness and her own at the bank; and this she accomplished when she executed the second deed in Chicago. It is not material, therefore, for the purposes of this case, whether the declaration of trust made by Rubey was or was not valid under the laws of Indiana. Neither Rubey nor the bank questions its validity, and certainly it is not for the interest of Mrs. Jackson to do so, in view of the validity of her absolute deed made under the laws of the state of Illinois.

We cannot ignore the Chicago transaction. That confronts us at every stage of the case, and no theory has been advanced by counsel for appellants by which the effect of that deed can be obviated. It cannot be said that that transaction was void under the laws of Indiana, as her laws have no extra territorial force or effect. It will not do to say that it was part of the Indiana transaction and therefore illegal and void, as the referee expressly finds that the Chicago deed was executed to enable the trustee to give a good title to the property, or, in other words, to make valid what was supposed to be an invalid transaction made in Indiana. We are inclined to the opinion that the true construction of the Chicago transaction is that the Rubey declaration of trust must, under the findings of the referee, be regarded as attached to and made a part of the Chicago transaction, and be treated precisely as though the declaration of trust had been made and delivered in Chicago, and that the original transaction in Indiana was abrogated. This was evidently the understanding of the parties, but they did not seem to have deemed it necessary to redate and redeliver the original declaration of trust. It is difficult to explain the Chicago transaction upon any other theory. What could have been the object of executing a valid and binding deed on the part of Mrs. Jackson to Rubey, unless it was intended to make valid the entire transaction? It can hardly be presumed that Mrs. Jackson would go to the trouble and expense of executing a deed in Chicago simply to vest an absolute title in Rubey to the property, without intending to hold Rubey to his declaration of trust, and require him to apply the proceeds arising from a sale of the property in the manner therein specified. Giving to finding 23, therefore, a fair and reasonable construction, we think it fully warrants us in holding that the entire Indiana transaction was abrogated, and a new and valid transaction was made in Chicago, which not only included the execution of a new and valid deed, but in effect included the making of a new declaration of trust. There is no other reasonable or satisfactory explanation of the Chicago transaction. To hold that Mrs. Jackson did execute, and

as found by the referee, intended to execute, a valid and binding absolute warranty deed of the Dakota property to Rubey, yet, that she did not intend to make valid the entire transaction, and hold Rubey to the execution of his trust, in the ·manner specified in the declaration of trust, would be giving the finding of the referee a most narrow and inadmissible construction, and one evidently never intended by the referee. The deed executed in Chicago was a full-covenant warranty deed, and in it no allusion is made to the Indiana deed, apparently treating the Indiana deed as a nullity. We are unable to see any escape from the conclusion either that Mrs. Jackson executed and delivered to Rubey a valid and absolute warranty deed to the property, which vested in him a perfect title to the same, free from any trust, or that Rubey took the property subject to a valid declaration of trust, under which he disposed of the proceeds arising from the sale of the property in the manner therein specified. Either view is equally fatal to Mrs. Jackson's claim to the two $3,000 notes, or the proceeds arising from a sale of the mortgaged property applicable to the same.

There is another important question presented in this case, and that is as to the proper distribution of the proceeds arising from a sale of the mortgaged premises under the decree in this action, as between the plaintiff and Mrs. Jackson. The referee concluded as matter of law, that the plaintiff bank was entitled to be paid out of the proceeds of sale the full amount found due to it upon its two $3,000 notes, after deducting attorney's fees stipulated in the mortgage, costs, charges, and expenses of sale, and that Lydia E. Jackson was entitled to the residue, if any, remaining. The court below adopted this conclusion of law, and the judgment was drawn in conformity thereto. The counsel for the appellant contend that, whatever view the court may take of the other questions involved in this case, it should hold that Mrs. Jackson is entitled to her pro rata share of the proceeds of the sale, as to the two $2,000 notes found to belong to her, and that the judgment of the court below should be modified in such man-

ner as to accomplish this result. In this contention we are inclined to agree with the appellant's counsel, and are of the opinion that the judgment should be modified in the manner suggested, by providing that Mrs. Jackson should be paid upon her two notes her pro rata share of the proceeds arising from the mortgage sale. As before stated, the referee finds that Mrs. Jackson was the owner and entitled to the two $2,000 notes. As such she is entitled, upon the foreclosure of the mortgage in controversy, to her pro rata share of the proceeds of the sale, after deducting attorney's fees, costs, charges, and expenses of sale, unless she is estopped from claiming such share by reason of some valid agreement made by her, or by some finding of the referee. There is nothing, as we view the case, in the original transaction, or in the Chicago transaction, that affects her right to those notes, or her right to share pro rata in the proceeds of the sale. In the statement of accounts made to Mrs. Jacksan by Rubey on April 1, 1891, these two notes are not mentioned or referred to. That statement is as follows:

Received, two notes, dated January 1, 1891, $3,000 each, one and two
years, at 7 per cent......................................... $ 6,000
1 per cent discount (on first note, $30; on second note, $600)......... 90

Proceeds at one and two years................................. $ 5,910
Add 8 per cent on $6,000, January 1 to April 1, three months........ 120

Present worth of notes....................................... $ 6,030
Cash payment.............................................. 5,000

Total receipts............................................. $ 11,030

Of this amount there seems to have been disbursed by Rubey $10,474.49, leaving a balance due Mrs. Jackson of $555.51 as before stated, and the two $2,000 notes. This account seems to indicate a final settlement between the bank and Mrs. Jackson, and the transfer of the two $3,000 notes seems to have been absolute to the bank, and treated as so much cash; and, as shown by the account, a balance was found due, and paid to her by check. The only transaction in which these notes are mentioned is thus found

by the referee: "(14) Contemporaneously with the delivery of said statement, the said Rubey delivered to the defendant Lydia E. Jackson an instrument in writing, in the words and figures following: 'The two notes on Evan B. Meredith, trustee, described in this assignment, are the property of Lydia E. Jackson, and are held by this bank as collateral security, upon the following terms and conditions: The Commercial Bank of Union City holds and owns two notes for $3,000 each, signed by Meredith, included in same mortgage, and due, respectively, in one and two years from January 1, 1891. The mortgage provides that forty acres of the land is to be released upon payment of each note, and these two notes of $2,000 each are held by this bank only to prevent the security of the bank on the two $3,000 notes from being impaired in case of release of a part of the land before said $3,000 notes are paid. If the two notes for $3,000 each are paid before the two notes of $2,000 each, then this bank is to assign the latter, with the mortgage, to said Lydia E. Jackson, without recourse. If the latter shall be paid first, then the bank may hold the money until the $3,000 notes are paid, and shall allow Mrs. Jackson, 7 per cent. interest thereon for the time it may be so held, or the bank may assign to Mrs. Jackson, on the terms and conditions of this assignment, the $3,000 note due January 1, 1893, and hold the $1,000 excess at 7 per cent. interest until the $3,000 note due January 1, 1892, shall be paid.' (15) That the said Lydia E. Jackson used the said check of $555.51 mentioned in said statement for her own benefit, but did not otherwise consent to or acquiesce in the items of said statement, or in the assignment of said $2,000 notes mentioned in paragraph 14 hereof." It will be observed that Mrs. Jackson's two $2,000 notes are held by the bank "only to prevent the security of the bank on the two $3,000 notes from being impaired in case of release of a part of the land before the two $3,000 notes are paid." There is no claim in this case that there has been any release of any part of the land; hence this condition has ceased to have any effect, and Mrs. Jackson holds her two notes discharged from this condition. Neither Mrs. Jackson, nor Rubey,

by her authority, has entered into any agreement with the bank giving it any priority of payment of its two notes; and, this being so, Mrs. Jackson is entitled to share pro rata in the distribution of the proceeds arising from the sale of the mortgaged premises. The authorities are not in harmony upon this question, the courts of some states holding that the notes are entitled to a priority in their payment by reason of their earlier maturity, and this is known as the "*pro tanto* rule." But we are of the opinion that the pro rata rule, which distributes the proceeds arising from the sale of the mortgaged premises, when a part of the notes secured by the same mortgage have been transferred and the mortgage assigned, ratably among the holders of the notes, without regard to the time of their maturity, is the better rule, when there is no express contract to the contrary, and is sustained by the greater weight and number of authorities, of which we shall only cite a few. This seems to be the rule in Michigan (English v. Carney, 25 Mich. 178; McCurdy v. Clark, 27 Mich. 445; Jennings v. Moore, 93 Mich. 231, 47 N. W. 127); in Minnesota (Wilson v. Eigenbrodt, 30 Minn. 4, 13 N. W. 907); in Pennsylvania (Donley v. Hays, 17 Serg. & R. 400; Fourth Nat. Bank's Appeal, 123 Pa. St. 473, 16 Atl. 779); in Nebraska (Manufacturing Co. v. McCargur, 20 Neb. 500, 30 N. W. 686; Todd v. Cremer, 36 Neb. 430, 54 N. W. 674). See Jones, Mortg. (5th Ed.) §§ 822, 1701a, and the full list of cases there cited. In McCurdy v. Clark, *supra*, Mr. Justice COOLEY reviews very fully subdivision 4, § 8498, How. Ann. St. Mich., which seems to be the section from which section 5413 of our Compiled Laws was taken, and he concludes that under that section the pro rata rule is the true and proper rule in mortgage foreclosures. The great length of this opinion precludes us from a further discussion of this question, or a review of the authorities holding to a contrary rule.

Our conclusions are that as the two $3,000 notes were accepted by the bank as so much cash, and a full settlement made with Mrs. Jackson, and the balance found due her paid over to her, leaving her the two $2,000 notes secured by the mortgage,

she is entitled to her pro rata share of the proceeds of the sale of the mortgaged premises. The bank, having received and applied the $5,000 cash payment, and accepted the two $3,000 mortgages as so much cash, can only equitably as well as legally claim its pro rata share of the proceeds of the sale. The conclusions of law of the court must therefore be corrected to correspond with the view herein expressed, and the judgment must be modified in accordance with this opinion, by providing that the proceeds arising from the sale of the mortgaged premises, after paying the attorney's fees, costs, and charges of sale, shall be paid to the plaintiff and said Lydia E. Jackson in the proportion of two-fifths to her and three-fifths to the plaintiff; and the judgment, when so modified, is affirmed, the parties, respectively, to pay their own costs.