## MUTUAL TRUST LIFE INSURANCE COMPANY v. ECKLUND BUILDING COMPANY AND OTHERS.
## WHITE-PRICE COMPANY, INTERVENER.[1]

June 13, 1930.

No. 27,844.

[1]Reported in 231 N. W. 207.

*Bauers, Carlson & Beveridge,* for appellant.

*Elof J. Carlson,* for plaintiff-respondent.

*Stinchfield, Mackall, Crounse & McNally* and *Thomas P. Helmey,* for intervener-respondent.

TAYLOR, C.

This controversy is wholly between the defendant Ecklund Building Company and the intervener, White-Price Company. John A. Ecklund had full charge of the Ecklund Building Company and managed and transacted all its business affairs. He seems to have considered himself as constituting the corporation and in transacting its business sometimes used his individual name. For the purposes of this case he and the Ecklund Building Company may be considered as identical and will be designated by the term defendant hereinafter.

In 1926 the defendant desired to erect an apartment building in the city of Minneapolis and to obtain funds therefor arranged with the intervener for a loan of $45,000, the money to be advanced as the work progressed. On May 26, 1926, the defendant executed ten promissory notes to the intervener bearing interest at the rate of six per cent per annum, payable semi-annually, and secured the payment thereof by a mortgage on the property. The notes were payable—one on May 26, 1927, and one on the same date each year thereafter until 1936. The first nine were for the sum of $2,500 each, and the tenth, payable May 26, 1936, was for the sum of $22,500. Both the notes and the mortgage contained an acceleration clause authorizing the holder to declare the principal due in case of any default. Before agreeing to make the loan the intervener had opened negotiations with the plaintiff and expected the plaintiff to take over the mortgage. After examining the property the plaintiff refused to loan $45,000 upon it. This refusal was followed by extended negotiations between the intervener and the plaintiff which finally resulted in an agreement between them whereby the plaintiff furnished $40,000 of the loan and the intervener $5,000 thereof, and the intervener retained the two notes of $2,500 each due respectively in 1934 and 1935 and assigned the mortgage and the other notes to the plaintiff. It was also understood between them that the notes transferred to the plaintiff should have priority over those retained by the intervener.

No payments were made of either principal or interest, and after the first note and three instalments of interest on all the notes had become due, the plaintiff brought this action to foreclose the mortgage. The intervener filed a complaint in intervention asking that the two notes which it held be included in the foreclosure and provided for in the judgment.

The court rendered judgment against the defendant for the sum of $46,408.11 in favor of the plaintiff and for the sum of $5,797.98 in favor of the intervener, and decreed that both judgments were liens on the property; that plaintiff's lien was superior to that of the intervener; that the property be sold; and that the proceeds

thereof be applied in paying the liens in their order. Defendant appealed from the judgment.

There is no controversy between the plaintiff and the intervener as to their respective rights in the security. They stipulated that the notes held by the plaintiff should have priority over the notes retained by the intervener.

Defendant concedes that the judgment is correct so far as it relates to the claim of the plaintiff and attacks only that part of it relating to the claim of the intervener.

Defendant contends that upon the assignment of the mortgage to the plaintiff by the intervener it ceased to be security for the notes retained by the intervener unless the plaintiff had agreed to hold it as security therefor, and that the evidence fails to prove a valid agreement so to hold it. While we think that the evidence would amply justify a finding that such an agreement was made, such a finding is unnecessary, for the universal rule is the converse of that claimed by defendant. Where a mortgage is given as security for several notes, it continues as security for all of them, whoever the holders may be and whether what may be termed the "legal title" to the mortgage is in one or another of such holders, in the absence of an agreement to the contrary. Unless it be otherwise agreed, the holder of the "legal title" of the mortgage holds it as security for all the notes covered by it. We find no authority to the contrary. Wilson v. Eigenbrodt, 30 Minn. 4, 13 N. W. 907; Hall v. McCormick, 31 Minn. 280, 17 N. W. 620; Bottineau v. Aetna Life Ins. Co. 31 Minn. 125, 16 N. W. 849; Northern Cattle Co. v. Munro, 83 Minn. 37, 85 N. W. 919, 85 A. S. R. 444; Weeks v. Weeks, 162 Minn. 93, 202 N. W. 277; and the exhaustive annotation in 50 A. L. R. 543.

Where the mortgage is foreclosed by action the respective rights of all the noteholders should be determined in that action, and the judgment should direct that the proceeds of the security be applied in accordance with their respective rights as so determined. Where the mortgage is foreclosed by advertisement under the statute it must be foreclosed by the one in whom the "legal title" to the mort-

gage stands of record. It can be foreclosed in that manner by no other. Such a foreclosure passes the title of the property to the purchaser at the sale and operates to transfer the lien of the noteholders from the property to its proceeds. Their equitable rights in such proceeds may be enforced in any proper proceeding. Dick v. Moon, 26 Minn. 309, 4 N. W. 39; Bottineau v. Aetna Life Ins. Co. 31 Minn. 125, 16 N. W. 849; Solberg v. Wright, 33 Minn. 224, 22 N. W. 381; Carpenter v. Artisans Sav. Bank, 44 Minn. 521, 47 N. W. 150; Northern Cattle Co. v. Munro, 83 Minn. 37, 85 N. W. 919, 85 A. S. R. 444. Statements in some of the cases to the effect that where the holder of the "legal title" of the mortgage has foreclosed it by advertisement other noteholders have only an equitable interest in the proceeds seem to be construed by the defendant as authority for the proposition that the assignment of a mortgage divests notes retained by the assignor of the lien of the mortgage. None of the cases go further than to hold that the lien is transferred from the property sold to its proceeds, and such cases are not in point here.

As the plaintiff and the intervener have stipulated that the notes held by plaintiff shall have priority over those held by the intervener and the defendant is not concerned in that question under the facts of this case, we have no occasion to consider it. It may be noted however that in Solberg v. Wright, 33 Minn. 224, 22 N. W. 381, the act of the mortgagee in transferring a part of the notes and assigning the mortgage to such transferee was construed as evincing an intention to give the notes so transferred priority over those retained.

It was understood between defendant and the intervener that the intervener should pay the money directly to those having claims for material and labor upon bills therefor approved in writing by the defendant. In response to a request by the intervener for written authority to make such payments the defendant wrote:

"I hereby authorize you to pay any bills presented to you for material, labor, etc. furnished in the construction of this building that are O.K'd with my signature."

It is conceded that all claims were duly paid on bills so O.K.'d, except a balance on the claim for plumbing. The contract for the plumbing was let to one Kiefer in May, 1926, for something over $10,000 to be paid when the job was completed. Kiefer lacked the funds necessary to pay for material and labor, and the defendant gave Kiefer promissory notes aggregating $6,200 with which to procure the necessary funds. Kiefer negotiated one of these notes for $2,000 to Joe Bassin and another for the same amount to Benjamin Lifson. At or near the completion of the work defendant claimed that the plumbing was defective and refused to pay Kiefer until the defects were remedied, and so informed the intervener. Bassin and Lifson began pressing for payment of their notes and threatened to institute legal proceedings. Several conferences were held, as a result of which the intervener paid these two notes. They were paid without written authority from defendant, and defendant insists that the amounts so paid should be deducted from the amount due the intervener. The court found as a fact that after a long conference and consideration of the matter the defendant orally authorized the intervener to pay these notes and that the intervener then paid them. This finding is amply sustained by the evidence. The only writing relating to the disbursement of the money is the letter above quoted. That was a mere instruction given by defendant, which the intervener desired for its own protection and which could be departed from or changed by an oral instruction at any time. 2 C. J. 449; 2 Dunnell, Minn. Dig. (2 ed.) § 1774.

We are satisfied that the learned trial court reached the correct result, and the judgment is affirmed.