(No. 22999.—

ANNA DOMEYER *et al.* Appellees, *vs.* WILLIAM L. O'CONNELL, Receiver, *et al.* Appellants.

*Opinion filed October 27, 1936—Rehearing denied Dec. 2, 1936.*

Jacob Cantlin, and Castle, Williams & McCarthy, (Samuel Rubin, Emmet J. McCarthy, Robert R. Hanley, and Sidney Yates, of counsel,) for appellants.

Ward, Ward & Scheineman, and Edward F. Mee, for appellees.

Mr. Justice Stone delivered the opinion of the court:

The question involved in this case concerns the distribution of the proceeds of a sale of mortgaged property where such proceeds are not sufficient to pay all notes executed with the mortgage.

Dora and John Wetzel executed to the First Trust and Savings Bank of Sterling thirty-two promissory notes aggregating $35,000, bearing the same maturity date, and secured them by a mortgage deed to the bank. Neither the notes nor mortgage contained any parity clause as to payment. Prior to their maturity all except $6000 of the notes

were sold and assigned by the bank to various assignees who are appellees here. The notes were endorsed by the mortgagee without recourse. Thereafter the bank failed and William L. O'Connell became receiver. The mortgagors having defaulted, appellees, as assignees of various of the mortgage notes, filed their bill for foreclosure and sale, and prayed that after paying costs and expenses the proceeds of the sale be applied *pro rata* to the payment of the notes held by all owners thereof except O'Connell as receiver of the bank, and that as to such notes the notes of appellees and other assignees take priority. The decree of the circuit court of Lee county was in accordance with the prayer of the bill, and its decree having been affirmed by the Appellate Court, the cause is here on leave to appeal granted.

The only question in the case is whether mortgage notes assigned by the mortgagee take priority over those still retained by him in case of insufficient proceeds from the sale of the mortgaged property. All authorities agree that the order in which notes secured by one mortgage shall be paid out of insufficient proceeds from the security is primarily a matter of contract, made either at the time of the execution of the mortgage between the mortgagor and mortgagee or at the time of assignment of the notes between the mortgagee and assignee, but as to what order the law shall adopt as the implied agreement of the parties, and whether such agreement shall be implied where nothing appears either in the mortgage or the contract of assignment, or whether there exists an equity in favor of assigned notes notwithstanding no agreement therefor, there is much conflict of authority. Appellees in this case say that by the act of assignment there is raised in equity a priority in favor of the notes in the hands of an assignee over those retained by the mortgagee. Whether this is said to result from the nature of the transaction of assignment alone, or from an implied contract between the mortgagee and assignee, is not quite clear.

Two inquiries arise here: First, is there an implied agreement that mortgage notes in the hands of an assignee shall take priority over those remaining in the hands of the mortgagee, and if not, then, second, is there an equity in favor of the assignee arising out of the act of assignment, merely. As to the first inquiry, we start with the general rule of law that mortgages and the assignment of mortgage notes are matters of contract. The rules concerning the construction of contracts are so well established as to require but brief attention. The object of construction is to ascertain the intention of the parties. (*Decatur Lumber Co.* v. *Crail,* 350 Ill. 319.) That intention is to be determined from the language used in the instrument and not from any surmises that the parties intended certain conditions which they failed to express. Where there is no ambiguity in the language used, from that, and that alone, may the intention of the parties be gathered. *Green* v. *Ashland State Bank,* 346 Ill. 174; *LaRocque* v. *Martin,* 344 id. 522; *Bearss* v. *Ford,* 108 id. 16.

Under no rule of construction can we say that an intention to give priority to assigned notes may be implied in the absence of stipulation or the use of language from which such intention necessarily arises. An implied intention is one necessarily arising from language used or a situation created by such language. If such intention does not necessarily arise it cannot be implied. On the other hand, absence of a provision from a contract is evidence of an intention to exclude such provision. Certainly, the fact of such absence cannot, of itself, give rise to an implied intention to include it. Here the assignment was without recourse. There is nothing in the language of the mortgage or assignment from which an implied agreement can be discovered. To hold otherwise would be to make a new contract for the parties.

Does, then, the act of assignment of one or more of several mortgage notes have the legal effect of giving pri-

ority to such assigned note over those remaining in the hands of the mortgagee? Under the common law an assignment of a chose in action did not carry with it a warranty that it would be paid. It was only where the assignor by some express contract rendered himself liable that a warranty existed in favor of the assignee. By such assignment the assignor, at common law, warranted only his title to the chose in action and that it was genuine and not a forgery, otherwise the assignee was left to the ordinary legal remedies for the collection of the debt. (*Strong* v. *Leoffler,* 85 Ill. 73; *Robinson* v. *McNeill,* 51 id. 225; *Condrey* v. *West,* 11 id. 146.) Under the present Negotiable Instrument act one negotiating an instrument by delivery or by a qualified endorsement warrants only that the instrument is genuine, that the assignor or endorser has a good title to it, that all prior parties had capacity to contract, and that the assignor or endorser has no knowledge of any fact which would impair the validity of the instrument. (Negotiable Instruments act, sec. 65; State Bar Stat. 1935, chap. 98, par. 85.) There being nothing in law to afford priority to such assignee, we then turn to the question whether there exists in the act of assignment any feature which in equity gives rise to a priority in favor of notes in the hands of an assignee as against those in the hands of the mortgagee. This question has never been before this court. While this court has held that mortgage notes are, in the absence of an agreement to the contrary, entitled to payment out of the proceeds of a foreclosure sale in the order of their maturity on the ground that the holder of the note first due has the first right to foreclose, (*Schultz* v. *Plankinton Bank,* 141 Ill. 116; *Flower* v. *Elwood,* 66 id. 438; *Gardner* v. *Diederichs,* 41 id. 158; *Vansant* v. *Allmon,* 23 id. 26; *Sargent* v. *Howe,* 21 id. 147;) cases of that character are of little assistance in determining whether a priority exists in cases where, as here, all notes mature on the same date. Courts of this country are

by no means in agreement on that question, and we approach it as an original question here.

Appellees argue that the bare fact of the assignment is sufficient to raise in equity a priority in behalf of the assigned notes. This was the view of the Appellate Court. Counsel cite those cases supporting the so-called *pro tanto* rule—that is, that upon assignment of a mortgage note the mortgagee assigned, *pro tanto,* sufficient of the mortgage to pay the note. Other cases hold that an assigned mortgage note is to participate *pro rata* with those retained by the mortgagee in the insufficient proceeds of the security. The variety of rules pertaining to the subject of priority of assigned notes and the diversity of opinion concerning them render a review of the decisions of the courts of this country of but little aid and beyond the proper scope of this opinion. Without going into an analysis of all the opinions written on the subject, it may be observed that a majority of the courts which hold to the so-called *pro tanto* rule, nevertheless hold that all assignees of mortgage notes share *pro rata,* as against each other, in the insufficient security. The maxim of equity that "equality is equity" runs throughout these cases, but some courts hereinafter referred to deem the fact of assignment to be sufficient to take the transaction out of the equitable rule of equality and to give to the assignee a priority over the mortgagee. Some States, Alabama, (*Cullum* v. *Erwin,* 4 Ala. 452, 458;) Virginia, (*McClintic* v. *Wise's Admrs.* 25 Gratt. 448, 18 Am. Rep. 694,) and West Virginia, (*Jenkins* v. *Hawkins,* 34 W. Va. 799, 12 S. E. 1090,) for example, hold that the mortgage note first assigned takes priority over all notes later assigned, on the ground that the first assignment carries with it the mortgage, and the assignees of the notes later assigned take only what is left in the mortgagee. It may be said, however, that by the great weight of authority the courts of this country, whether adopting the so-called *pro tanto* or the *pro rata* rule, as between assignee and mort-

gagee, are agreed that as between assignees of notes bearing the same maturity date there is not, in the absence of contract, a preference or priority. (*Studebaker Bros. Manf. Co.* v. *McCargur,* 20 Neb. 500, 30 N. W. 686; *Adams* v. *Lear,* 3 La. Ann. 144; *Burhans* v. *Mitchell,* 42 Mich. 417, 4 N. W. 178; *Penzel* v. *Brookmire,* 51 Ark. 105, 10 S. W. 15; *Smith* v. *Bowne,* 60 Ga. 484; *Campbell* v. *Johnston,* 4 Dana, (Ky.) 178; *Dixon* v. *Clayville,* 44 Md. 573; *Wilson* v. *Eigenbrodt,* 30 Minn. 4, 13 N. W. 907; *Bank of England* v. *Tarleton,* 23 Miss. 173; *Bridenbecker* v. *Lowell,* 32 Barb. (N. Y.) 9; *Andrews* v. *Hobgood,* 1 Lea, (Tenn.) 693; *Keyes* v. *Wood,* 21 Vt. 331; *First Nat. Bank* v. *Andrews,* 7 Wash. 261, 34 Pac. 913.) The general adoption of this rule of *pro rata* sharing among assignees is of importance in considering the basis or logic of the so-called *pro tanto* rule.

Omitting those cases where the question was not directly passed upon or the statements in opinions touching the question were *obiter dicta,* the courts adopting the *pro tanto* rule, where the matter was directly involved, are, so far as our investigation has disclosed: Alabama, (*Cullum* v. *Erwin, supra;*) Georgia, (statute;) Indiana, (*Parkhurst* v. *Watertown Steam Engine Co.* 107 Ind. 594;) Virginia, (*McClintic* v. *Wise's Admrs. supra;*) Oklahoma, (*Lawson* v. *Warren,* 34 Okla. 94, 124 Pac. 46, 48;) Louisiana, (*Salzman* v. *His Creditors,* 2 Robins. 241;) and Ohio, (*Anderson* v. *Sharp,* 44 Ohio St. 260, 6 N. E. 900.) Those States adopting the *pro rata* rule when the question was definitely before the court are as follows: Pennsylvania, (*Donley* v. *Hays,* 17 S. & R. 400, 403;) Maryland, (*Dixon* v. *Clayville,* 44 Md. 573;) Mississippi, (*Pugh* v. *Holt,* 27 Miss. 461;) Tennessee, (*Andrews* v. *Hobgood,* 69 Tenn. 693, (1 Lea, 693;) New Jersey, (*Kelley* v. *Middlesex Title Guarantee and Trust Co.* 115 N. J. Eq. 592;) Michigan (*Jennings* v. *Moore,* 83 Mich. 231;) and Texas, (*Salmon* v. *Downs,* 55 Tex. 243.) Many other opinions appear in

the books in which the view of the court on this question is hinted at but where it was not directly before the court. These we do not discuss but leave the interested student of the question to a perusal of treatise and digests on the subject.

An investigation of all the decisions which we have been able to find on this subject does not disclose a discussion of the reason for nor logic of the rule held by some courts to give to an assigned mortgage note priority over one retained in the hands of the mortgagee. The recent case of *Kelley* v. *Middlesex Title Guarantee and Trust Co. supra,* which adopts the *pro rata* rule, discusses the logic underlying its holding. Most of the courts adopting the *pro tanto* rule base their holding on the early Alabama case, (*Cullum* v. *Erwin, supra,*) which, in turn, is based largely on the dissenting opinion in *Donley* v. *Hays, supra,* a Pennsylvania case. These cases are hereinafter referred to.

*Cullum* v. *Erwin, supra,* and other early cases, reflect the influence of the old common law theory of a mortgage, which conferred upon the mortgagee the right to immediate possession unless there be special terms giving to the mortgagor the right to reserve possession until default. (2 Blackstone's Com. 157.) By reason of this fact, when the mortgagee assigned an interest in the debt—which he had difficulty in doing without consent of or notice to the mortgagor—(*Ashenhurst* v. *James,* 3 Atkyns, 271; 15 Viner's Abr. (2d ed.) p. 443;) he was deemed to have assigned not the entire right of possession but a co-parcenary interest therein, and the assignee having waived the right to co-possession of the premises, the assignor mortgagee was held to account to him for his portion of the rent. Out of this grew the theory that the mortgagee, on assignment of a part of the mortgage debt, became trustee for the benefit of such assignee and surety for the payment of the assigned portion of the debt. It was but natural, therefore, that courts of equity found in such relationship an equity in

favor of the assignee of a part of the mortgage debt as against the mortgagee assignor. Such are no longer the characteristics of a mortgage. Not only does the mortgagor retain possession, but even on default the mortgagee can only apply to a court of equity to foreclose his lien. The security is pledged to pay all notes issued under the mortgage.

What, then, are the circumstances under which an equity may be said to arise in favor of the assignee of a modern mortgage note as against the assignor mortgagee? Pomeroy, in his Equity Jurisprudence, (sec. 1203,) has written: "The mortgagee having transferred his note and received the consideration therefor, it would be inequitable in him to deprive the assignee of any part of its value by insisting upon a priority or even an equality of right in sharing the insufficient proceeds." This learned writer in support of the text cites *Cullum* v. *Erwin, supra,* and later cases, which in turn have adopted the reasoning of that opinion. This case, decided in 1842, may be said to be among the earliest American cases in which the so-called *pro tanto* rule was adopted. In 1828 the Supreme Court of Pennsylvania, in *Donley* v. *Hays, supra,* held in a case where of three mortgage bonds two had been assigned and the other retained by the mortgagee, that all bonds should share *pro rata* in the insufficient proceeds of the security. The court there said: "It seems impossible for us to decide that Walton, [the mortgagee,] is not entitled when we say that an assignee under him would be entitled to a dividend of money. There appears no fact or principle to exclude Walton. There is no warranty in his transfer, express or implied; so far from there being an assignment by him of his whole right in the mortgage, there is no assignment of any part of it except what is implied by the transfer of the bond. If Walton has imparted no preference to others he certainly must be considered as retaining his right of equality." Chief Justice Gibson, of that court, filed a dissenting opin-

ion, which was adopted as the better rule by the Alabama court in the case of *Cullum* v. *Erwin, supra,* which has been since cited by courts adhering to the so-called *pro tanto* rule. Gibson's dissent is based not upon any warranty or personal liability of the assignor nor on the assignment of all the security, but asserts that there is an equity in favor of the assignee, based on the broad ground of moral obligation on the assignor's part.

What, then, is the logic of such a view? From what does the moral obligation on the part of the assignor arise? As we have seen, the courts of a few States (Alabama, Virginia and West Virginia, for example,) hold that as among assignees the first takes priority, yet, as we have also seen, the great majority of courts, including courts adopting the *pro tanto* rule as against the mortgagee, hold that the assignees share *pro rata* as among themselves. Certainly, this generally adopted rule of *pro rata* sharing among assignees without regard to the date of the assignment is at war with the logic of the so-called *pro tanto* rule as to the assignment of the mortgage debt. If A, as mortgagee, owns three notes, one of which he assigns to B and later assigns another to C, retaining one, then, if the *pro tanto* rule as applied can be said to be logical, B, who took the first assignment, would, logically, be entitled to be first paid out of the insufficient security, and it would also logically follow that neither A, the mortgagee, nor C, the second assignee, could participate on an equal basis with B, yet most courts hold assignees participate *pro rata*.

The so-called *pro tanto* rule is illogical in another respect. Assuming, in the illustration just given, that the security is sufficient to pay but the note first assigned, then the other two notes are of no value if they remain in A's hands, yet if A assigns a second note it shares *pro rata* with the one first assigned. Thus A gives to it a value it did not theretofore have. That value is given against the interest of the first assignee, who must now share the security with

such second assignee, though in all likelihood the second assignment is made without the knowledge of the first assignee. So, also, if A choose to assign the third note he will thereby give it a value that it does not have in his hands.

It is recognized by all courts that the assignment of a part of the debt carries with it the assignment of at least a co-parcenary interest in the security. There is, however, in logic, no basis for a rule that assignment of a part of the debt by the very nature of the assignment itself transfers more of the security than is represented by the part of the debt assigned. In the illustration hereinbefore used, the mortgage made to secure three notes is deemed to secure each equally. Each note is entitled to one-third of the security. As was well said by the Supreme Court of Minnesota in *Wilson* v. *Eigenbrodt, supra:* "The mortgage is as much security for one note as another, \* \* \* for the mortgage is one; and the mortgage being a mere incident to the debt, an assignment of part of the debt carries with it a *pro rata* portion of the security. The different holders of the mortgage debt, therefore, stand *æquali jure,* and consequently are entitled to participate *pari passu* in the fund derived from the security." By what logic may it be said that by the mere transfer of one of these notes, in the example above given, its value may be enhanced to, as may be, absorb all of the security and later decreased to one-half its value by the assignment of a second note, or to one-third by the assignment of all of the notes? Certainly the so-called *pro tanto* rule, as applied, rests upon peculiarly grotesque logic.

Is there, then, a moral obligation on the part of the mortgagee assignor to refrain from participating on a parity with his assignees in the insufficient proceeds of the security? If so, what is it? In the absence of a contract giving priority to the assignee the latter simply takes over a part of the investment. He knows from the mortgage that

he does not have it all. He also knows that other notes in the hands of the mortgagee may be assigned, and that he has no right to complain if they are. If the mortgagee has not done an act he has no right to perform but in the further assignment of mortgage notes does but that which, as his assignee well knows, he has a right to do, from what does his moral obligation to his assignee arise? The argument leads to this: Though the mortgagee, if he choose, may dispose of all of the balance of the notes without any moral obligation on his part to refrain from so affecting the value of the notes first assigned, yet if, perchance, he retain one of the notes he may not urge its equal participation in the insufficient proceeds of the security because, forsooth, there is a moral obligation resting upon him, and this despite the knowledge by the assignee that he was taking but a part of the debt and that the security was given to secure all the notes. This argument seems curiously wanting in logic. As Tiffany well wrote (3 Real Prop. (1920 ed.) p. 2552):
"Whether the assignee is in such case entitled to payment in full, out of the mortgaged land, of the part of the debt assigned, before any part of that retained is paid, would seem properly to depend on whether, in that jurisdiction, the assignor of a chose in action is ordinarily to be regarded as impliedly warranting the payment of the claim. If he is so to be regarded there is a clear equity in favor of the assignee that the assignor shall not, by asserting a conflicting claim against a fund from which it is payable, interfere with its payment in full, while, on the other hand, if no warranty is to be implied, it is somewhat difficult to perceive any ground for raising an equity in favor of the assignee as to the application of the mortgaged security, in the absence of language showing an agreement to give him priority."

As we have seen, neither at common law nor by statute, in this State, does such warranty, in case of an assignment, exist. A moral obligation resting upon the mort-

gagee to protect the interest of his first assignee in the security, requiring that he refrain from participation in the insufficient proceeds yet permitting him to materially affect such interest by subsequent assignments, is, indeed, a strange specie of moral obligation.

Mortgage notes have to-day become generally used as commercial paper. While it may be said to be prudent that the contract of the parties definitely provide for equality in participation or priority, as the parties choose, yet the requirements of present day commercial business are such as to render it strongly advisable that a rule affecting the value of assigned mortgage notes, which will render as nearly certain as possible the means of determining that value, be announced. An illogical rule which leaves the investor uncertain as to his rights but causes them to depend upon whether he is the only assignee, or whether the mortgagee has assigned other or all of the mortgage notes, ought not be adopted.

Counsel for appellees argue that it would be inequitable to permit the mortgagee to participate on a parity with the assignees, as it would, in case of insufficient security, result in his securing a larger percentage of his claim than the assignees would get of theirs, and that this is not right. Why this is so is by no means clear. The assignee purchases a fractional part of the investment and puts himself in the same situation as to that part as is occupied by the mortgagee in relation to the balance. While the mortgagee receives value for the note assigned, he first gave value for it in the original loan to the mortgagor. At the time of the distribution of the proceeds of the security he and the assignees are in precisely the same situation. It is as though each had contributed a corresponding part of the loan to the mortgagor and had taken a like portion of the mortgage notes and mortgage. As was said in *Kelley* v. *Middlesex Guaranty and Trust Co. supra,* where the same argument as here advanced by appellees was used on a like state of

facts, "the argument seems based on curiously unsound logic."

We are of the opinion that neither logically nor equitably can it be said that an assignee who purchases what he must be held to know is but a part of the mortgage debt is entitled to have his note paid in full out of an insufficient security merely because of the assignment, without more. The logical and equitable principles which should control in a situation where, as here, all notes mature on the same day, bring us to the conviction that assignees and the mortgagee should share *pro rata* in the proceeds of insufficient security.

It follows that the judgment of the Appellate Court is erroneous. That judgment and the decree of the circuit court are reversed and the cause is remanded to the circuit court, with directions to enter a decree in accordance with the views herein expressed.

*Judgment of Appellate Court and decree of circuit court are reversed and cause is remanded to circuit court.*