(No. 14301.—Decree affirmed.)
REBECCA E. PHENNEGER et al. Appellants, vs. GEORGE I. KENDRICK et al. Appellees.

*Opinion filed December 22, 1921—Rehearing denied Feb. 10, 1922.*

1. DEEDS—*whether deed is delivered depends on intention of grantor and on circumstances.* No particular form or ceremony is necessary to constitute the delivery of a deed but the intention of the grantor and the circumstances of each case must control, and anything which clearly manifests an intention that the deed shall presently become operative and effectual and that the grantor loses all control over it constitutes a sufficient delivery.

2. SAME—*what constitutes delivery of deed in escrow.* Where a grantor executes deeds and places them in the hands of a third person, to be delivered to the grantees unconditionally after her death, with the full understanding that she loses all control and dominion over the deeds, such act constitutes a valid delivery and the deeds take effect not at the death of the grantor but immediately upon being delivered in escrow, and anything done or said by the grantor after such a delivery cannot divest the title.

APPEAL from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

W. E. WILLIAMS, and A. CLAY WILLIAMS, for appellants.

L. T. GRAHAM, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Anna E. Saylor, of Pike county, died on February 27, 1920. She had been married three times. Her first husband was Samuel Kendrick, and by their marriage she had eight children: Rebecca E. Phenneger, Emma J. Irick, Mary E. Harshman, Grace M. Bell, Anna E. Windmiller, Dora E. Koerner, George I. Kendrick and Arcade J. Kendrick. After the death of her husband she married a man named Thomas, who died, and later she married Henry Say-

lor, who survived her. The children of the first marriage were her only heirs-at-law, and Rebecca E. Phenneger, Emma J. Irick, Mary E. Harshman and Grace M. Bell filed their bill in the circuit court of Pike county against George I. Kendrick, Arcade J. Kendrick, Anna E. Windmiller, Dora E. Koerner and the executor of the will of Anna E. Saylor, and tenants, praying for the partition of 537 acres of land in Pike county. The bill alleged that Anna E. Saylor executed a last will and testament but did not devise the lands in question and the same descended as intestate estate to her heirs-at-law, but the defendants claimed some interest in the lands other than as heirs-at-law. George I. Kendrick in his own right and as executor, and Arcade J. Kendrick, answered, denying that their mother was the owner of the lands described in the bill at the time of her death but alleging that she on January 27, 1914, conveyed 231 acres of the land to George I. Kendrick, 226 acres to Arcade J. Kendrick, 40 acres to Anna E. Windmiller and 40 acres to Dora E. Koerner, but Anna E. Windmiller and Dora E. Koerner had refused to accept their deeds. Anna E. Windmiller and Dora E. Koerner filed answers admitting the allegations of the bill, and alleging that while their mother had made and executed the deeds they were advised and believed that the deeds were never delivered. Henry Saylor died before the bill was filed. The evidence was heard by the chancellor and the bill was dismissed for want of equity.

Anna E. Saylor, who owned the lands on January 27, 1914, was a woman of unusual business experience and ability, managing her farms and attending to considerable business affairs. On January 27, 1914, she went to the office of Edwin Johnston, an attorney in Pittsfield, who had acted as her attorney in some other business, and told him that she wanted to make some deeds but did not want the deeds turned over to the grantees at that time. He told her he thought it was better to do that, but she did not want to

do it.  She gave him directions as to how the lands were to be divided and the deeds to be prepared, and she talked the matter over at considerable length and gave reasons for what she was doing.  He wrote drafts of the deeds as she directed and she signed them.  She said she was doing business at the Barry Bank, and she wanted to put the deeds in the custody of John Weber, of that bank.  The attorney told her that it was better to make a delivery to the grantees at the time to avoid any question.  She said she did not want to do that but wanted to put them with Weber, to be delivered at her death.  He explained to her the law on that subject and told her the deposit must be unconditional, with the distinct understanding that it was beyond her recall and that Weber would have the right to deny her the custody of the deeds; that the delivery must be irrevocable and could not be recalled and absolute possession must leave her.  She said she would do that and brought her husband to the office and he signed the deeds and they were acknowledged.  When Saylor came up and signed and acknowledged the deeds the attorney repeated what he had told Mrs. Saylor, to make it certain that she understood.  Some time afterwards she mentioned to the attorney having made a will disposing of the rest of her property that she had not deeded.  She took the deeds to the Barry Bank and delivered them to Weber, the cashier, and they remained in the custody of the bank until after her death.  On March 12, 1915, she executed a will written by herself, in which she stated that on January 27, 1914, she deeded to her two sons, George I. Kendrick and Arcade J. Kendrick, 460 acres, more or less, divided into two deeds, and also to her two daughters Anna E. Windmiller and Dora E. Koerner 80 acres, the southwest 40 acres to belong to Anna E. Windmiller and the southeast 40 acres to Dora E. Koerner.  By the will she devised lands in Kansas to daughters, and recited that the two sons, George and Arcade, were each to pay to their sisters $1000 each, as their deeds would show.  These

recitals of the will corresponded with the deeds, and each deed to the sons provided that the grantee should pay $6000 to the six daughters named therein, $1000 to each.

The sole controverted question of fact was whether the deeds to George I. Kendrick, Arcade J. Kendrick, Anna E. Windmiller and Dora E. Koerner were delivered. These deeds, and a warranty deed to Rebecca E. Phenneger, Emma J. Irick, Mary E. Harshman and Grace M. Bell, conveying 80 acres of land in Kansas, were made and acknowledged in the office of the attorney, as before stated, and were done up in a single package tied with a red ribbon when taken by Mrs. Saylor to the Barry Bank. She handed the package to John Weber, the cashier, and said they were deeds and were to be in his custody, not as a bank officer but in his care until her death, when they were to be delivered according to the deeds to the parties to whom they were made. That occurred in the directors' room of the bank, and Mrs. Saylor walked out in the public hall within a few feet of Bessie Stearns Strubinger, assistant cashier. Weber was in the cage and there was a latticework between him and Mrs. Saylor. He said that Mrs. Saylor had left the deeds for him to hold until her death, and she could hear what he said. The package was put in a vault with a screw safe used for money and papers considered of more than usual importance. There was another vault in which there were safety deposit boxes and Mrs. Saylor had a box in the safety deposit vault. Mrs. Saylor wrote her own will, dated March 12, 1915, and took it to the bank to be witnessed. The package of deeds was then in the screw safe, and she brought with her a folder book with a black cover, containing different compartments. She left the black book with the will enclosed in an envelope in one of the compartments, and there were other papers in other compartments. The package of deeds was then either tied to the book or put in it so that there was only a single package, which was put in the screw safe. Weber did not remember whether the pack-

age was put with the will in the black book, but said they
were all put together in a single package in some manner.
Weber left the bank in 1919 and went to California.  He
was seventy-eight years old when he testified and his testi-
mony to the facts stated was positive.  On cross-examina-
tion he said that shortly after he returned from California
he talked with the solicitor for the complainants and did
not then remember that Mrs. Saylor left any deeds with
him, but he afterwards called the solicitor by telephone and
told him that he had recalled the fact.  In a later conver-
sation he stated to the solicitor that Mrs. Saylor had left
the deeds with him, but if she gave him any directions as
to what to do with them he had no recollection.  He testi-
fied that after talking with the solicitor he got to thinking
about the matter and the facts were brought back to his
memory.  There is not the slightest reason to doubt that the
deeds were delivered to Weber, that they remained in the
bank and were never taken away or reclaimed by Mrs. Say-
lor, and Mrs. Strubinger's testimony to that effect was un-
questioned, as well as what was said by Weber in the pres-
ence of Mrs. Saylor when she was in the hallway.  After
the death of Mrs. Saylor the black book was taken from the
screw safe and taken to the county court, and on opening it
it contained in one compartment the will and in another
the deeds.  The attorney had advised Mrs. Saylor what was
essential to make a delivery, and when he told her what
must be done she said she would do that.

Delivery is essential to make a deed operative, but no
particular ceremony is necessary.  It may be by acts with-
out words or words without acts, or both.  No particular
form or ceremony is necessary to constitute a delivery,
and anything which clearly manifests the intention of the
grantor that the deed shall presently become operative and
effectual and that the grantor loses all control over it con-
stitutes a sufficient delivery.  (*Riegel* v. *Riegel,* 243 Ill.
626.)  Intention is the controlling element which deter-

mines whether a deed has been delivered, and the question depends in great measure upon the particular circumstances of each case. (*Hoyt* v. *Northup,* 256 Ill. 604.) After the deeds were made and delivered to Weber, Mrs. Saylor said to her grandchild, daughter of one of the complainants, that she had a notion to destroy her papers and give what she had to her grandchildren, and at another time said she had a notion to tear up her papers and let the children settle it among themselves the best they knew how. Afterward she told the same witness, with reference to giving a road across some of the land, that she had made her papers, and if she gave them a road she would have to go and tear them up and make things over again. She made the same statement to another witness that she would have to go and get her papers and get a road through, but it would cause her so much trouble she did not feel like doing it and she would give them money to buy a road. She also offered to sell a part of the land deeded to George I. Kendrick. But these facts can only be considered so far as they have any bearing upon the question whether the deeds were delivered. Where a grantor executes a deed and places it in the hands of a third person, to be delivered to the grantee unconditionally after the death of the grantor, and the grantor loses all control and dominion over the deed, such act constitutes a valid delivery and the deed takes effect, not at the death of the grantor but immediately upon being delivered in escrow. If the deeds were delivered the title passed, and nothing that Mrs. Saylor could do or say would divest the title. *Moore* v. *Downing,* 289 Ill. 612; *Waters* v. *Lawler,* 297 id. 63.

The conclusion of the chancellor was in accord with the evidence, which quite clearly proved a delivery of the deeds, and the decree is affirmed.          *Decree affirmed.*