## COMMISSIONER OF INTERNAL REVENUE v. MOIR.

### No. 4324.

Circuit Court of Appeals, Seventh Circuit.

Dec. 3, 1930.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Morton Poe Fisher, and John G. Remey, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Joe S. Franklin, both of Washington, D. C., of counsel), for petitioner.

John G. Campbell and Herman A. Fischer, both of Chicago, Ill., for respondent.

Before ALSCHULER, SPARKS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge.

The question here is whether profit from a sale of a certain leasehold was realized in 1920 or in 1921 by the taxpayer, whose returns were on cash basis. The Board of Tax Appeals decided that it was realized in 1920, and the government appeals.

By a contract in writing, dated July 1, 1920, taxpayer agreed for the sale of a 99-year leasehold for $195,000. The contract provided that $10,000 be paid at once to a third party, and, when the title was found satisfactory, this sum be paid over to the seller (i. e., $5,000 to the seller and $5,000 to his broker in payment of commission for making the sale), together with $40,000 more, whereupon the seller was to deposit with the third person, in escrow, a duly executed conveyance of the leasehold, together with assignment of subleases and insurance policies. Upon payment of the balance within one year thereafter, the papers were to be delivered to purchaser.

The purchaser, being desirous of building upon the premises, and not wishing to assume the management of the property prior to removal of the old buildings, arranged that seller should retain possession and collect rents from the subtenants, and pay buyer interest on the $50,000 until balance of purchase price was paid, and that, until the final payment was made, seller should comply with all the terms of the lease and hold purchaser harmless from any violation of its terms; that on final payment there should be an adjustment between the parties of taxes and insurance premiums; and, in case purchaser fails to carry out its contract, then at seller's option seller may retain as liquidated damages all money paid, and the contract then to be null and void. Purchaser was solvent and wholly responsible for the agreed balance of purchase price.

The $10,000 was paid on execution of the contract, and the $40,000 on or about October 20, 1920, at which time purchaser signified its satisfaction with the title, and all necessary papers were delivered in escrow as agreed; and the purchaser placed on record in the recorder's office a receipt manifesting the payments made and containing a description of the leasehold property. The payment to seller's broker was also then made in accordance with the agreement.

The balance of the purchase price, $145,000, was paid, and the papers in escrow were delivered to purchaser in 1921.

The facts are set forth in greater detail in the findings of the Board, as appear in 14 B. T. A. 23, to which, as well as to the entire report there appearing, we refer, in the interest of economy of space, and to avoid duplication, so far as we may, in any further report of the case.

The Revenue Act of 1918 was in force when this taxpayer made his return in 1920. Departmental regulations promulgated under this act and bearing on a comparable situation provide:

Reg. 45, art. 44:

"Deferred payment sales of real estate ordinarily fall into two classes when considered with respect to the terms of sale, as follows:

"(1) Installment transactions, in which the initial payment is relatively small (gen-

erally less than one-fourth of the purchase price) and the deferred payments usually numerous and of small amount. * ; *

"(2) Deferred payment sales not on the installment plan, in which there is a substantial initial payment (ordinarily not less than one-fourth of the purchase price), deferred payments being secured by a mortgage or other lien. Such sales are distinguished from sales on the installment plan by the substantial character of the initial payment and also usually by a relatively small number of deferred payments.

"In determining how these classes shall be treated in levying the income tax, the question in each case is whether the income to be reported for taxation shall be based only on amounts actually received in a taxing year, or on the entire consideration made up in part of agreements to pay in the future."

Reg. 45, art. 46:

"In class (2) in article 44 the obligations assumed by the buyer are much better secured because of the margin afforded by the substantial first payment, and experience shows that the greater number of such sales are eventually carried out according to their terms. These obligations for deferred payments are therefore to be regarded as equivalent to cash, and the profit indicated by the entire consideration is taxable income for the year in which the initial payment was made and the obligation assumed. * * * "

■ These regulatory provisions appear to be entirely reasonable and logical, and, applying them here, we have what is, in essence, a real estate sale wherein the title was approved by the purchaser and more than one-fourth of the purchase price was paid in 1920 and deeds then were delivered in escrow; obligation for the balance being assumed by a perfectly solvent purchaser, affording resultant security not only on the leasehold, but as well on so much of the purchase price as had been paid. Then there is the recording in 1920 of the receipt manifesting the payments made; the payment of the broker's commission as of a completed transaction; and the delivery of the deed in escrow, which upon the final payment would relate back to the time when delivered in escrow. Phenneger v. Kendrick, 301 Ill. 163, 168, 133 N. E. 637. All these things in our judgment manifest a transaction regarded by the parties as completed in 1920—and in fact completed in that year, and the profit thereon in that year accrued—to all intents and purposes as though the entire consideration had in 1920 been paid in cash. In our judg-

ment the facts bring the case within the purview of the statute and the regulations respecting what may be considered the equivalent of cash transactions.

We conclude that the circumstances here disclosed warranted the Board of Tax Appeals in determining that the profit from this transaction accrued to the taxpayer in 1920; and its judgment, predicated on such determination, is affirmed.