(No. 29344.—

MARJORIE CLODFELTER *et al.*, Appellees, *vs.* J.' O. VAN
FOSSAN *et al.*, Appellants.

*Opinion filed May 21, 1946.*

Mills, Umfleet & Mills, and Creighton & Kerr, both of Fairfield, for appellants.

Burgess, Loy & Burgess, of Fairfield, and Donovan D. McCarty, of Olney, for appellees.

Mr. Justice Gunn delivered the opinion of the court:

Marjorie Clodfelter and others, hereinafter referred to as appellees, filed a suit in equity in the circuit court of Wayne county against J. O. Van Fossan and Harold Van Fossan, hereinafter referred to as appellants, in which they sought to set aside and have declared null and void certain deeds and instruments in writing executed by their father, Joe Van Fossan, Sr., hereinafter referred to as the father, and his wife, to appellants, which instruments were as follows: (1) A certain mineral deed dated August 15, 1936, conveying one half of the oil and other minerals under 222 acres to J. O. Van Fossan (appellant); (2) a warranty deed dated February 20, 1940, from the father and mother to appellants for 222 acres of land, subject to an oil lease and certain indebtedness; (3) a certain escrow agreement dated February 20, 1940, signed by the father and his wife and appellants; and to have the real estate described in these instruments decreed to be vested in the

heirs-at-law of the father, now deceased. Upon a hearing in open court the chancellor denied all relief prayed by appellees, except that it decreed three certain mineral deeds executed by appellants, conveying to each appellee a one-tenth interest in the minerals under said land be delivered to appellees, and an accounting between appellees and appellants be rendered by a fixed date. Appellants appeal directly to this court as a freehold is involved. Appellees did not assign any cross error to the action of the trial court.

The facts are substantially as follows: The father owned 222 acres of land in Wayne county; on August 15, 1936, he and his wife executed an oil-and-gas lease on said premises to a party who assigned it to the Pure Oil Company. On the same day they executed and delivered to J. O. Van Fossan (appellant) a mineral deed to one half of the oil and minerals under said premises. The father was considerably indebted; there were two real-estate mortgages on the farm, aggregating $3981.75. He also owed his sons, J. O. Van Fossan and Harold Van Fossan (appellants) $2200. On February 20, 1940, a deed was prepared in which the father conveyed to appellants all of said land subject to the following: (1) the Pure Oil Company lease; (2) the J. O. Van Fossan mineral deed in one half of the minerals; (3) the two mortgages aggregating $3981.75, which the grantees agreed to pay; (4) a covenant that the grantees would care for and provide for the grantors, or the survivor, during their natural lives; (5) subject to the grantors reserving possession and use of the land during life. This deed was not presently delivered, but an escrow agreement was prepared at the same time between the father and mother and appellants. Appellees were not parties to the escrow agreement but were made beneficiaries, as pointed out hereafter. The father died May 24, 1940, shortly after the deed to appellants was delivered and recorded. Oil was produced in the spring

of 1943, and appellees demanded of appellants a statement of the sums to be paid by them, which was the consideration to be paid by appellees for their mineral deeds, hereinafter referred to. Appellants refused to give this statement and suit followed. The mother of appellants is still living.

The so-called escrow agreement is rather unusual in character. It first relates to the agreement between the father and appellants, and recites the execution of the warranty deed by the father, with all of the conditions specified therein, as just noted, the consideration being "and for the further consideration that the parties of the second part [appellants] make and execute a good and sufficient mineral deed conveying to [appellees] each an undivided one-tenth (1/10) interest in all oil and gas lying in and under the said premises, to be delivered according to the provisions hereinafter contained." The agreement also recites appellants have made and executed the mineral deeds to appellees above described, subject to the oil leases, mortgages and life estate. The escrow agreement then provides the real-estate deed to appellant and the mineral deeds to appellees are deposited with the First National Bank of Fairfield, Illinois, and the deed to the *real estate* is to be delivered to appellants upon the death of the father "if and upon the condition that the said parties of the second part have fully paid the mortgage indebtedness" of the father. The balance of the so-called escrow agreement refers to the three mineral deeds executed contemporaneously with the father's deed, the proper construction of which portion of the agreement is determinative of this suit. It is as follows:

"It is further expressly understood and agreed that within one year from the death of the survivor of the parties of the first part, if the said Wallace V. Van Fossan, Enola Van Fossan and Marjorie Clodfelter shall each pay to the parties of the second part, their heirs, administrators, or assigns, one fifth (1/5) of the Twenty-Two Hundred Dollars ($2200.00) consideration paid by

the said parties of the second part to the parties of the first part for the conveyance to them of the real estate described in said real estate deed deposited herewith, and a one-fifth (1/5) part of all expenses that the parties of the second part have been to in the caring for and providing for the parties of the first part, as provided in said real estate deed, then the said Fairfield National Bank of Fairfield, Illinois, shall deliver to each of said parties, or to such of them as shall comply with this agreement, the mineral deed or mineral deeds herewith deposited with the Fairfield National Bank, said bank to deliver said mineral deeds if and when the said parties of the second part have submitted the total amount of their expenses in caring for and providing for the parties of the first part, and the said Wallace V. Van Fossan, Enola Van Fossan, and Marjorie Clodfelter, or such of them as comply with this agreement, have submitted satisfactory evidence that they have so paid their one-fifth part of said expenses in caring for and providing for the said parties of the first part. If the said Wallace V. Van Fossan, Enola Van Fossan and Marjorie Clodfelter do not each pay their one-fifth part of said expenses for caring for and providing for the said parties of the first part as herein provided, then said mineral deeds, or the mineral deed or deeds of such of said three who do not comply with this agreement in paying said one-fifth part of the care and support of the parties of the first part, are to be surrendered by the Fairfield National Bank of Fairfield, Illinois, to the parties of the second part in this contract, and are to be null and void and of no effect."

The position of the appellants is that the circuit court entered a decree contrary to the provisions of this escrow agreement, and in so doing considered evidence which gave to the escrow agreement a meaning contrary to its plain and unambiguous terms, and that under such agreement the mineral deeds could not and would not be delivered until one year after the date of the death of the mother. The contention of appellees is necessarily confined to this issue since they did not prosecute a cross appeal nor assign cross errors as to the action of the court in sustaining the other transactions between appellants and their father. Ill. Sup. Ct. Rules Nos. 35 and 39.

We do not disagree with the contention of appellants that if the language of a contract is plain and unambiguous, oral testimony cannot be heard to contradict or vary its

meaning or to give it a meaning inconsistent with the language used in the instrument. (*Domeyer* v. *O'Connell,* 364 Ill. 467.) The principle is well settled. Two questions, however, arise in this case which are not discussed by appellants: (1) as to the effect of an escrow agreement where the beneficiary or grantee is not a party to the contract; and (2) as to the intention of the father with respect to the effective date of the delivery of the mineral deeds, as disclosed by the provisions of the contract. These two propositions must be considered together, as we have held that deeds and contracts executed contemporaneously must be construed together. *Grindle* v. *Grindle,* 240 Ill. 143.

Appellants treat the contract as though there had been a direct transaction between them and the appellees, and every case cited by appellants, holding the title to property in escrow passes as of the time of the second delivery, is a case in which the controversy was between the two parties to the contract. This is not the situation in the instant case. At the time the escrow was made the father owned all of the property except one half of the mineral rights previously conveyed. He was selling his interest in the land for a money consideration and for the support of himself and his wife, retaining a life use of the property, and was in effect making a family settlement, which included a provision for his other children, the appellees. As a part of this agreement, the execution of these mineral deeds was an additional consideration for the conveyances the father was making to appellants, and was as necessary as the other requirements to entitle the latter to the benefit of the father's contract with them. The deed of the father might never be delivered, as appellants might never perform the conditions that were required to be performed. The mineral deeds executed on this same date at the time of their execution conveyed nothing, and might never be effective, not because of appellees' failure to pay a one-

fifth part of the upkeep of the father and mother, but because appellants might never perform the conditions requisite to their receiving delivery of the deed from the father.

The important question, therefore, in this case is not to determine when the deed of the father passed title to appellants by delivery, but at what time did the father intend the mineral deeds from appellants to appellees to be delivered under the contract he had made with appellants for their benefit.

It is to be noticed that the deed from the father to appellants was based upon a condition, viz., "if and upon the condition that the said parties of the second part have fully paid the mortgage indebtedness against said described premises * * *." There is no such condition expressed in the contract with respect to the delivery of the mineral deeds. When the contract with respect to the mineral deeds is carefully examined it will be noted it contains two provisions with respect to the deeds: The first is "within one year from the death of the survivor" appellees shall pay;[e] and the second, "said bank to deliver said mineral deeds if and when the said parties of the second part [appellants] have submitted the total amount of their expenses" and appellees have paid their one-fifth. It appears the first provision is a limitation on the time to make payment, and that the other is a provision that payment may be made at any time the bills are submitted and agreed upon.

The contract with respect to the mineral deeds was in the nature of a family settlement, but an absolute and positive contract for the delivery of the mineral deeds could not be made because the appellants might not perform the necessary conditions. Appellants then would have nothing to convey, and the land of the father, including the one-half of the mineral rights, would be intestate property, of which appellees would each inherit one fifth of the land and one tenth of the minerals. The agreement between the father and appellants was a true escrow agree-

ment, as his deed to them was to be delivered "if and upon condition." If such deed to appellants became effective the mineral deeds would become operative by way of estoppel, as they were warranty deeds. The rule is the law presumes much more in favor of the delivery of a deed of voluntary family settlement, and the presumption of law is in favor of delivery, and the burden of proof is on the grantor, and those claiming through him, to show there was no delivery. *Water* v. *Lawler*, 297 Ill. 63; *Baker* v. *Hall*, 214 Ill. 364; *McReynolds* v. *Miller*, 372 Ill. 151.

In the deed from the father to appellants there was a reservation of a life estate. In the mineral deeds from appellants to appellees there was likewise a reservation as follows: "and subject to the life estate reserved by the grantors herein for and during the natural life of Jos. Van Fossan, grantor." The law is the intention of the parties to the contract controls as to the effective date of delivery. (*McClugage* v. *Taylor*, 352 Ill. 550.) And where there is a reservation of a life estate, especially in cases of voluntary settlement, a strong presumption is raised that title should vest immediately in the remainder-men; otherwise there would be no necessity for the reservation. *McClugage* v. *Taylor*, 352 Ill. 550; *Riegel* v. *Riegel*, 243 Ill. 626; *Baker* v. *Hall*, 214 Ill. 364.

As further evidence of the fact that the father intended the title to the minerals should vest without being subject to condition is the provision of the last part of the agreement with respect to depositing the mineral deeds, to this effect: If appellees "do not each pay * * * then said mineral deeds, * * * are to be surrendered" by the bank to appellants, and are "to be null and void." This language indicates the deeds were effective from a date previous to such failure to pay; otherwise there would be no occasion for rendering something void which never had become effective.

It is our conclusion the second part of the escrow agreement, affecting the mineral deeds made by appellants to appellees, was intended to become effective at the same instant the deed from the father to appellants became effective. It is obvious he was trying and intended to make some provision for appellees, who were not consulted about the contract, and instead of reserving from a conveyance to appellants the shares represented by the mineral deeds he conveyed all of his interests to appellants, and required them concurrently to execute deeds. Appellants would never have anything to convey until they performed their contract with him. If they did not perform, the appellees received the share of their father's estate. If appellants did become entitled to the deed from the father the latter intended the transfer of title to the minerals to relate to that date; but appellees should make payment at a date not later than one year after the date of the death of the survivor. As pointed out above, the intention prevails.

The rule that title in cases of escrow agreements vests from the time of the second delivery is not universal. There is a general principle applicable to escrows which is well settled, *viz.*, upon the final delivery of an escrow instrument by the depositary, upon the performance of the condition of the escrow agreement, the instrument will be treated as relating back to and taking effect at the time of its original deposit in escrow, where a resort to this fiction is necessary to give the deed effect to prevent injustice, or to effectuate the intention of the parties. (*Price* v. *Pittsburg, Fort Wayne and Chicago Railroad Co.* 34 Ill. 13; *Leiter* v. *Pipe*, 127 Ill. 287; *Phenneger* v. *Kendrick*, 301 Ill. 163.) See, also, *Calhoun County* v. *American Emigrant Co.* 93 U. S. 124, 23 L. ed. 826, and authorities from many other States, collected in 117 A.L.R 70. The rule originated in the common law, and is thus stated by Coke: "The second delivery hath all its force by the first de-

livery, and the second is but an execution and consummation of the first; and therefore in case of necessity, * * * it shall have relation by fiction to be his deed *ab initio,* by force of the first delivery." Sheppard's Touchstone, chap. IV, p. 59, is to the same effect.

In *Stone* v. *Duvall,* 77 Ill. 475, this principle was applied in the case of a deed made by a father in favor of a daughter, which was deposited in escrow to be delivered upon the father's death. In the meantime the daughter died, and the court held that upon the death of the father the deed would take effect and vest title by relation back to the date of the first delivery in escrow. (*Hathway* v. *Payne,* 34 N. Y. 90; *Taft* v. *Taft,* 59 Mich. 185; *Smiley* v. *Smiley,* 114 Ind. 258; Devlin on Deeds, Vol. 1 (3d ed.,) secs. 319 and 320.) The principle is applicable here. It was clearly the intention of the father that the appellants not have title to three tenths of the mineral interests. He intended these interests to become the property of appellees. He desired that appellants be paid. Unless the deeds of appellants to appellees passed title to appellees the father's intention would be thwarted and a part of the required consideration for appellants' deed would not be performed, and, hence, to carry out his intention, during the period of time within which appellees had a right to make payment appellants would be trustees, as in the case of a vendor who had made a contract of purchase with a vendee, and would be required to convey when payment had been received.

The best proof of this intent is the fact that nowhere is there expressed an intention the appellants should own or have the mineral rights reserved to appellees, but at most should have an equitable lien thereon to secure the payment of the amount due for the support of the parents, and the one fifth of $2200. In their brief appellants do not claim they are holding title to these mineral rights, but

seem to urge that nothing can be required until the death of the mother, leaving the determination of the ownership of the oil until that date. Even were this true they would be in a position similar to that of a mortgagee who is receiving rents and profits from a property upon which a mortgage is held.

There is ample evidence in the record to show, as a matter of fact, that the foregoing was the actual intent of the father in making the deeds and in requiring the execution of the escrow agreement with appellants. It is not necessary to refer to this testimony, as we think the intent of the parties appears from the escrow agreement and the situation surrounding the parties at the time of its execution. We are of the opinion, however, the circuit court erred in requiring a delivery of the deeds without providing for security for the payment of the amounts required to be paid by appellees. It is true they offered to pay, and appellants have not made an accounting, upon request, to enable them to pay, their sole excuse being the total amount could not be ascertained until the death of the mother, who is still living. Since it was the intention of the father that the deeds to appellees should be effective concurrently with the delivery of the deed from him to appellants, but retained until the full amount necessary to reimburse appellants is returned, in equity the appellants would be entitled to security until they are paid.

In order to protect both parties and render complete a transaction in which the intention is apparent, but which the contract fails to fully provide for, the circuit court, as a condition to the delivery of the deeds to appellees, should have appointed a trustee to hold and take the proceeds derived from the mineral estate of appellees until the full amount due and payable to appellants under the contract with the father shall be fully discharged. Should it appear the amount coming into the hands of the trustee is

more than sufficient to pay the proper charges of appellants, the court can make the proper order, releasing a part of said funds to appellees.

There is no reason why appellants should not be required to make an accounting of the amounts accrued to the present date, and permit appellees to make payment thereof, leaving for future consideration only the upkeep and support of the mother. For this reason it is necessary to reverse said cause, and remand it to the circuit court, and upon such trustee being appointed by the court, the mineral deeds shall thereupon be ordered delivered to appellees, and a lien imposed upon the proceeds of oil, until the consideration required by the escrow agreement is discharged.

Inasmuch as the appellants have been partially successful in their appeal, it is ordered the costs thereof be divided equally between appellants and appellees.

*Reversed and remanded, with directions.*