**SCULLY et al. v. FOSTER–WHEELER CORPORATION.**

No. 9807.

United States Court of Appeals
Seventh Circuit.

Dec. 7, 1949.

George B. Christensen, Charles J. Calderini, Edward J. Wendrow, Chicago, Illinois, for appellant.

Edgar A. Jonas, Frederick C. Jonas, Chicago, Illinois, for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

FINNEGAN, Circuit Judge.

George T. Scully and James V. DiMayo, Jr., co-partners doing business as the Acme Construction Company, citizens of Illinois, brought suit in the United States District Court for the Northern District of Illinois, against Foster-Wheeler Corporation, a New York Corporation, to recover damages for alleged breach of contract. The case was tried by the Court without the intervention of a jury and judgment was entered against the defendant for $6,897.09 and costs.

The defendant seeks reversal on three grounds: (1) that the lower court erred in the construction it placed upon the contract between the parties; (2) that the court's findings of fact were erroneous; and (3) that errors were made in rulings on the admissibility of evidence.

In 1946 the defendant, Foster-Wheeler Corporation, which does a world-wide business in designing and erecting oil refinery equipment, had a contract to erect, on cost plus basis, for the Great Lakes Carbon Company a carbon reactivating or oil treating plant in Chicago, Illinois. It appears that Foster-Wheeler, since it was a non-resident and was not registered with the district council and with local labor organizations, was not a qualified contractor in the Chicago area. Hence it became necessary for them to employ a local masonry contractor.

On July 22, 1946, the Acme Construction Company directed to the defendant a proposal in writing. The letter stated: "In further reference to conversation of even date, we propose to furnish all labor including masons, carpenters, concrete finishers, iron workers and labors to complete all the work as proposed by you at 2701 East 114th St., in the City of Chicago, under your supervision. And to furnish any and all materials or equipment necessary for the completion of this work on the following basis."

Subsequently and on the fifth of August, 1946, the parties entered into a written contract. This agreement which designated Acme Construction Company, as Sub-Contractor, and Foster-Wheeler Corporation as General Contractor, provided in part as follows:

"1. The Sub-Contractor shall in accordance with the terms of the agreement, and the General Conditions hereinafter described, furnish from time to time as requested by the General Contractor, labor, materials and equipment for the construction of a carbon reactivating and sulphur recovery plant being constructed by the General Contractor, situated at 2701 E. 114th St., in the City of Chicago, County of Cook and State of Illinois.

"The purpose of this contract is to provide for such labor, supervision, skilled craftsmen and such material and construction equipment as may be requested from time to time by the General Contractor for use in connection with the masonry work necessary for the construction of the plant referred to hereinabove.

"2. This contract shall run from the date of these presents until the completion of the construction of the plant referred to hereinabove.

"3. It is agreed that the General Contractor shall have the right to cancel this contract if the work is stopped upon orders of its customer, Great Lakes Carbon Corporation.

"4. The General Contractor shall pay to the Sub-contractor as the costs of the services: etc." (Since the parts of the contract relating to price are not questioned in this appeal there is no necessity to set out or consider the other matter included in Part 4 of the Contract.)

This agreement, together with the general conditions, form the contract.

General Conditions.

"1. The Sub-contractor shall furnish duly qualified and experienced artisans, workmen, foremen and supervisors to carry out the work to be performed by it under the Contract. The Sub-contractor shall at all times enforce strict discipline and maintain good order among the workmen engaged in such work, and shall cause such workmen to observe all reasonable fire prevention and safety rules and regulations in force at the site of the work, and it shall not employ any unfit person or anyone not skilled in the work assigned to him."

At the time this agreement was executed on August 5, 1946, Foster-Wheeler sent to Acme Construction Company a field purchase order which directed: "Please enter our order No. H. R. 296 F66 covering the materials and/or labor covered by your quotation to us of July 22, 1946 and subject to the agreement and General Conditions attached hereto. This agreement and General Conditions are to be considered a part of this order, and we would appreciate your returning to us duly executed copy of this agreement before proceeding with the order."

Shortly after entering into the agreement of August 5, 1946, Acme Construction Company entered upon the performance thereof and undertook to furnish all labor, including masons, carpenters, concrete finishers and iron workers, and all material and equipment necessary. Foster-Wheeler then furnished blue prints and plans indicating the manner in which said improvements were to be erected. On November 25, 1946, the defendant wrote plaintiff as follows:

"Confirming our conversation with your Mr. DiMayo we wish to advise that we consider the work covered by your agreement complete when you have completed the foundation for the steel tower for deareto as shown on our drawings HR 296-22 F. 50A."

"You will therefore remove your equipment from the job site at the Calumet plant of the Great Lakes Carbon Corporation as soon as convenient."

"Also please cancel our purchase order No. H.R. 296 F66 dated August 5, 1946 * * *"

When the November 25th letter was written the defendant owed the plaintiff $9,996. Plaintiffs protested the attempted repudiation of their contract and notified defendant that they were ready, willing and able to proceed to completion under its terms.

However, defendant persisted in its attitude and engaged another sub-contractor who furnished labor and material such as plaintiff had provided up to November 25.

As a result the suit now at bar was instituted. Plaintiff claimed not only the $9,996 actually due on November 25, with interest thereon, but also damages in the sum of $90,000 for loss of profits by reason of defendant's failure to proceed under the agreement of August 5, 1946.

The defendant filed a motion to strike the complaint on the ground that the contract of August 5 was terminable at will because, it was said, its stated purpose was merely to provide for such labor, supervision, skilled craftsmen and such material and construction equipment as might be requested from time to time by the general contractor. After several continuances this motion was overruled and the defendant was required to answer.

The first answer denied the charge that the plaintiff undertook to furnish all labor, material and equipment necessary to erect the proposed plant, and alleged that the only work of plaintiffs was in connection with masonry work and that plaintiffs never undertook to furnish all the materials necessary to erect the plant. The answer further denied that plaintiff had performed the conditions precedent under the contract, denied that the defendant was indebted to the plaintiff, and charged that plaintiff had failed to furnish trained and adequate supervision, had failed to provide supervision capable of reading blue prints, that it was necessary for defendant to furnish actual supervision on a great part of the work, that plaintiff has increased the number of men on the job for the purpose of increasing the base on which to figure the percentage, and had through these failures and actions caused damage to defendant in a sum in excess of $9,996.

Plaintiff, in the meantime, had filed a motion for summary judgment in the sum of $9,996 and interest, and an affidavit in support thereof. This motion was withdrawn without prejudice.

After the first answer was filed, plaintiff demanded a bill of particulars making more specific the allegations of the answer above referred to. This motion was allowed. First and second additional amendments to the answer were filed by the defendant, and replied to by the plaintiff.

Finally, on June 3, 1948, the parties entered into the following stipulation:

"1. This is a suit of a civil nature and the pleadings raise no jurisdiction issue; that the grounds upon which jurisdiction of this court depends are diversity of citizenship between the parties hereto; and the amount in controversy exceeds Three Thousand ($3,000.00) Dollars exclusive of interest and costs.

"2. That the statements and conclusions of fact herein set forth shall, for the purpose of determining the issues involved in this cause and for no other purpose, be deemed and construed to be true and correct, and that all matters herein set forth, together with the facts admitted to be true in the pleadings, shall be received by the court as having been duly established and proved, except as objection to the competence, materiality or relevance of any matter herein set forth shall be made by either party hereto, such right so to object being hereby reserved to each of the parties; that each party also reserves the right to offer and introduce at the trial evidence on his own behalf in addition to the evidence agreed upon in this stipulation.

"3. Since the filing of this lawsuit the defendant has paid to the plaintiffs the sum of Nine Thousand Nine Hundred Ninety-Six ($9,996.00) Dollars, representing payment in full for all labor and materials furnished by plaintiffs up to November 25, 1946, and for the purpose of this lawsuit the court can ignore the claim of the plaintiffs to the said sum of Nine Thousand Nine Hundred and Ninety-Six ($9,996.00) Dollars and the answer of the defendant directed to said claim for Nine Thousand Nine Hundred Ninety-Six ($9,996.00) Dollars.

"Agreed Statement of Facts.

"4. The defendant, as general contractor, had sometime prior to July 22, 1946, entered into a written contract with Great Lakes Carbon Corporation for the construction of a carbon reactivating and sulphur recovery plant in the City of Chicago and State of Illinois.

"5. That on July 22, 1946, plaintiffs conferred with defendant with respect to furnishing as sub-contractor certain labor and material on said construction project; and on that date plaintiffs directed a written proposal to the defendant, a true and correct copy of which is attached to the complaint herein as Exhibit 'A'.

"6. That on August 5, 1946, the defendant directed a written communication to the plaintiffs, known as a field purchase order, a true and correct copy of which is attached to the complaint as Exhibit 'B'.

"7. That on or about August 5, 1946, the plaintiffs and the defendant entered into a written agreement, a true and correct copy of which is attached to the complaint as 'Exhibit C'; that shortly thereafter, plaintiffs began to perform under said Agreement and in the course of their performance did the following: Erected temporary buildings for the storage of equipment and for the use of the workmen in changing their clothes; made excavations, poured footings for concrete foundations, built forms for concrete foundations, placed reinforcing steel rods in said forms; poured concrete in the foundations forms, and erected scaffolds.

"8. The temporary buildings, the foundation forms and the scaffolds were erected by carpenters. The reinforcing steel rods were placed in the foundation forms by steel workers known as rod men; that the concrete was mixed and poured by concrete workers.

"9. On November 25, 1946, defendant directed a letter to plaintiffs, a true and correct copy of which is attached hereto as Exhibit 'D.'

"10. That on November 26, 1946, plaintiffs, through their attorney, directed a letter to defendant, a true and correct copy of which is attached hereto as Exhibit 'E.'

"11. That defendant remained in possession and control of the premises upon which the improvements were erected; that defendant refused to permit plaintiffs to inspect said premises after November 25, 1946, and defendant refused to permit plaintiffs to furnish any more labor or material.

"12. Shortly after November 25, 1946, defendant entered into an Agreement with The Cook Company, a Chicago contracting firm, as sub-contractor, to do and perform

the carpentry, masonry and reinforcing steel work remaining to be done upon project, pursuant to plans submitted by Foster-Wheeler Corp.

"13. The books and records of the Cook Company disclose the following information with respect to the work done by it on said project:

| | | |
|---|---|---|
| Carpentry Labor 12/29/46–8/1/47.. | $23,389.83 | |
| Masonry Labor 12/29/46–6/20/47.. | 17,859.73 | |
| Concrete Labor 12/29/46–7/18/47.. | 15,648.85 | |
| Clerical Labor 1/3/47–7/3/47...... | 310.00 | |
| | | $57,208.41 |
| Insurance 12/29/46–8/1/47 ........ | 2,095.87 | |
| 1% O. A. B. and 3% Fed. U. C. 12/29/46–8/1/47 ................. | 2,288.34 | |
| Received by the Cook Company 15% Commission 12/29/46–8/1/47 | 9,238.90 | |
| Gross Payroll .................... | | 70,831.52 |
| Materials furnished by the Cook Company for the period 1/15/47–7/23/47 ......................... | 4,093.99 | |
| 10% Commission received by The Cook Company ................. | 499.03 | |
| | | 4,593.02 |
| Total monies received by The Cook Company to complete the Carpentry, Masonry and reinforcing steel work upon said project after November 25, 1946, in accordance with the plans and specifications submitted to the plaintiffs ........................... | | $75,424.54" |

The case was tried in the District Court on October 12, 1948. The foregoing stipulation of June 3, 1948 was supplemented by two additional paragraphs. The first of these, with ten sub-paragraphs sets forth the defense that the plaintiffs did not duly perform all the terms and conditions of the contract by them to be performed. The sub-paragraphs detailing the various alleged failures of the plaintiffs, and instances of alleged incompetency on the part of plaintiff DiMayo, and of improper actions on his part.

The second additional paragraph sets up as an additional breach of said contract by plaintiffs arising from the general condition therein as to arbitration.

The trial court also heard the testimony of witnesses produced by both parties, and the arguments of their respective counsel. On November 17, 1948, findings of fact and conclusions of law were made and drawn, and judgment entered for the plaintiffs in the sum of $6,897.09.

The first contention made on behalf of the defendant is that the District Court erred in the construction it placed upon the contract between the parties. When the documents which integrate the contract, namely: the letter of proposal, or offer of the plaintiff, dated July 22, 1946; the written contract of August 5, 1946; and the field purchase order of the same date, are carefully considered they justify the construction of the trial court.

The offer proposes to furnish all labor, including masons, carpenters, concrete finishers, iron workers and labors to complete the work proposed at 2701 E. 114 Street, Chicago. The contract itself provides that the plaintiff shall, in accordance with the terms and general conditions of the contract, furnish from time to time as requested by defendant, labor, materials and equipment for the construction of a plant at 2701 E. 114th Street, Chicago. The contract specifies that its object is to provide for such labor, supervision, material, and construction equipment, as may be requested from time to time by defendant, in connection with the masonry work necessary for the construction of the plant. Section 2 contains this language: "The contract shall run from the date of these presents until the completion of the construction of the plant referred to hereinabove."

The field purchase order bearing the date of the contract purports to order "the materials and/or labor covered by your quotation (offer) to us of July 22, 1946."

It requires no citation of authority to justify the trial court's conclusion that the contract was that plaintiff should supply, in accordance with its terms and conditions such labor, material, supervision, and construction equipment as might be required in connection with the construction of the plant at 2701 E. 114th Street, Chicago. It was not terminable at the will of the defendant but was to continue until the completion of the plant referred to.

Manifestly all the labor, materials and construction equipment would not be required at one and the same time. It was to be delivered from time to time as required or requested by the defendant.

The fact that after plaintiff was discharged by defendant, it was necessary for defendant to employ a third party to provide the labor, materials and construction equipment required for use in connection with the masonry work necessary for the completion of the plant, conclusively establishes, that the construction by the trial court was proper, and that defendant's claim, in its letter of November 25, 1946, that plaintiff's contract was completed, was a mere subterfuge.

In this connection, we may well consider the defendant's claim that the trial court erred in its rulings on the admissibility of evidence. The record discloses that the trial court found that the language of the contract was plain and unambiguous. The testimony offered and excluded related to conversation had with plaintiffs or one of them, before or at the time the contract was executed.

The Supreme Court of Illinois has stated, Clodfeeter v. Van Fossan, 394 Ill. 29, 67 N.E.2d 182, that if the langauge of a contract is plain and unambiguous, oral testimony cannot be heard to contradict or vary its meaning or to give it a meaning inconsistent with the language used in the instrument. They cite as authority Domeyer v. O'Connell, 364 Ill. 467, 4 N.E.2d 830, 108 A.L.R. 476, one of the cases cited by the defendant. We find no error in the rulings of the trial court in this regard.

As to the remaining contention that the facts found by the trial court are erroneous, it would seem sufficient to point out that Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides in part "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

The trial court found that plaintiffs performed their work in a competent and workmanlike manner, and performed all the terms and conditions under the contract to be by them performed.

The judgment of the District Court is affirmed.